BARTON GARROTT *vs.* RICHARD JOHNSON of WM.—*June* 1840

It is a well established principle, that to make the record of a former trial ev- idence to conclude any matter in issue between the parties, it should appear by the record or other proof, that the same matter was in issue and decided at the former trial.

Where in the trial of a cause, it is necessary and proper, to prove what a deceased witness swore on a former trial, between the same parties, where the issue or matter in controversy is the same; it is sufficient for the living witness, who is called to testify, to prove that the deceased witness sworo to certain *facts*, and he need not prove the precise words employed by such deceased witness.

Such a rule of evidence will not interfere with the right of juries to draw inferences, and decide upon the effect of the evidence laid before them.

APPEAL from *Frederick* County Court.

This was an action of *assumpsit*, commenced by the ap- pellee against the appellant, on the 14th March, 1837. The plaintiff declared for goods, &c., sold and delivered; money lent, advanced, and paid; had and received. The defendant pleaded first, *non assumpsit.*

*2nd.* That the said *Richard*, before and at the time of issu- ing the original writ of the said *Richard*, in this cause, to wit, on the fourteenth day of March, in the year 1837, at the coun-

ty aforesaid, was and from thence, hitherto hath been and still is indebted unto him the said *Barton* in a much larger sum of money then the money due and owing from the said *Barton* to the said *Richard,* and whereof the said *Richard* hath above complained against him the said *Barton,* to wit, in the sum of two thousand dollars, current money, for certain goods, theretofore sold and delivered, &c. And also, for divers large sums of money theretofore paid, laid out and expended by the said *Barton,* to, &c., lent and advanced by, &c. And also, for divers other large sums of money theretofore had and received by, &c., to wit, the sum of, &c., which said sums of money, and all of them, still remain wholly due, owing and unpaid to the said *Barton* by the said *Richard,* and which sums of money exceed the damages sustained by the said *Richard,* by reason of the not performing of the several promises and assumptions of the said *Barton* in the said declaration mentioned, and out of which said sums of money he the said *Barton* is ready and willing, and hereby offers to set off and allow to the said *Richard* so much as the damages sustained by the said *Richard,* by occasion of the not performing of the said several promises and assumptions of him the said *Barton,* in the said declaration mentioned, amount to according to the act of Assembly in such case made and provided; and this he is ready to verify, &c.

*3rd.* That the said *Richard* is largely indebted to him the said *Barton* upon and by virtue of a judgment which he the said *Barton,* heretofore, to wit, at February term, in the year one thousand eight hundred and thirty-eight, in *Frederick* county court recovered against the said *Richard* in a certain plea of debt, whereby it was considered and adjudged that the said *Barton* should recover of the said *Richard* as well the sum of three hundred and twelve dollars and fifty cents debt, as the sum of five hundred dollars for his damages and costs, as by the record and proceedings remaining in said court more fully appears, which said judgment still remains in full force and effect, and not discharged or satisfied, and this the said *Barton* is ready to verify by the said record, which said sum of mo-

ney due and owing from the said *Richard* to the said *Barton*, as aforesaid, exceeds the damages sustained by the said *Richard*, by reason of the non-performance by him the said *Barton*, of the said several supposed promises and undertakings in the said declaration mentioned, and out of which said sum of money so due and owing from the said *Richard* to the said *Barton*, he the said *Barton* is ready and willing, and hereby offers to set off and allow to the said *Richard* the full amount of the said damages, according to the form of the act of Assembly in such case made and provided, and this the said *Barton* is ready to verify, &c.

The defendant replied, as to the first plea of the said *Barton* by him above pleaded, saith, that the said *Barton* did assume in manner and form as the said *Richard* hath above set forth, &c. And as to the *second* plea of him the said *Barton* the said *Richard* comes, &c., and saith, that the said *Richard* did not undertake or promise in manner and form as the said *Barton* hath above alleged in his said second plea, and of this the said *Richard* puts himself upon the country, &c. And as to the *third* plea of the said *Barton*, the said *Richard* defends, &c., and saith, that the said *Barton* ought not to maintain or have his plea aforesaid, because the said *Richard* saith, that *there is no such record* of the recovery aforesaid, in the said suit, now here remaining in court, as the said *Barton*, by his said plea hath above pleaded, and this he is ready to verify, &c. Whereupon he prays judgment, if the said *Barton* ought to have or maintain his said plea, as above by him pleaded, &c.

First exception. At the trial of this cause the plaintiff, to support the issues joined on his *part*, gave in evidence to the jury that he in the years 1834 and 1835, delivered to the defendant in this case, three hundred barrels of Indian corn; he then gave in evidence to the jury the record and papers in the case of *Barton Garrott vs. Richard Johnson of Wm.* tried at the October term of this court, 1838, which action was commenced on the 1st of March, 1837. The plaintiff therein, *Barton Garrott* declared for a breach of the following agreement, to wit: Agreement between *Richard Johnson* and *Barton Gar-*

*rott* are such, that the said *Garrott* gives to the said *Johnson* his negro man *Sandy*, for two hundred and fifty barrels corn, to take the corn on *Peria*, and the balance from *Virginia*, and to furnish bags to have it brought down; the said *Garrott* to deliver to the said *Johnson* the said negro to-morrow or the next day, or when the said *Johnson* takes his negroes to the south. The corn to be delivered by said *Johnson* in ten or fifteen days from *Virginia*, to take the corn from *Peria* immediately. Witness our hands and seals the 6th January 1836.

Test,—*Jno. Cost.*                     RICHARD JOHNSON,

                                        BARTON GARROTT.

The defendant in that cause (*Johnson*) pleaded *non-assumpsit*, and by way of set off that *Garrott* was indebted to him for goods sold and delivered; for money lent, advanced, &c. Issues were joined as well on the general issue plea as the plea of set off. The jury found a verdict for the defendant *Johnson*, and at the trial of that cause two exceptions were taken, viz:

1st. At the trial of this cause the plaintiff, to support the issues on his part joined, gave in evidence to the jury a contract in writing, entered into on the 6th day of January, 1836, signed by the said plaintiff and defendant, for the sale of a negro man, slave for life, named *Sandy;* (here insert said written agreement,) it was also proved by competent testimony, that the said defendant was at the time of making said contract, a citizen of *Frederick* county, of respectable character, and who had not been in the habit of purchasing negro slaves for a foreign market, but was at the time of said sale engaged in purchasing negro slaves to take to some of the southern States, beyond the limits of this State, and that the plaintiff was apprised, at the time of the sale, and delivery of said negro slave, for life, that the defendant was purchasing him to take and remove him beyond the limits of this State; and that he was so removed beyond the limits of the State of Maryland; and that there was no bill of sale given and executed for said negro *Sandy*, by the plaintiff to the defendant, as is prescribed by the act of Assembly passed at the December session, 1817, chapter 112; and it is admitted that nothing was said at the

time of said sale and delivery of said negro slave, about a bill
of sale being necessary, by and between the plaintiff and de-
fendant, and that the defendant did not claim of the plaintiff to
execute and deliver a bill of sale of said negro to him; and
it is also admitted, that the said plaintiff is a respectable
man, residing in the county of *Frederick* aforesaid, and did at
the time of said sale reside in said county.    It was also prov-
ed by competent testimony, that the said plaintiff delivered said
negro slave to the said defendant in pursuance of said contract,
and on Sunday, February 8th, 1837, he was received by said
defendant, and that the defendant afterwards delivered to the
plaintiff about one hundred and sixty barrels of the corn spe-
cified in said written contract, in part payment of said negro
man *Sandy*.    The defendant thereupon by his counsel pray-
ed the court to instruct the jury, that if they shall believe from
the evidence in this case, that the defendant purchased said ne-
gro man *Sandy*, with intent, and for the purpose of removing
him beyond the limits of this State, and that the plaintiff, at
the time of selling and delivery of said negro man, knew that
the defendant intended to remove said negro man *Sandy* be-
yond the limits of this State; and shall further believe that no
bill of sale for said negro man *Sandy* was executed and deliv-
ered by the said plaintiff to the said defendant, that then the
plaintiff in this case is not entitled to recover the price for said
negro man *Sandy*, which opinion and instruction the court
gave to the jury.    The plaintiff excepted.

2nd. The plaintiff then by his counsel, upon the facts stat-
ed and set forth in the first bill of exceptions, which facts are
to be taken and considered as part of this bill of exceptions,
prayed the opinion and instruction of the court to the jury, that
if they shall believe from the evidence, that the plaintiff sold
said negro slave mentioned in the declaration to the defendant,
and was to receive in payment and satisfaction for said negro
slave, two hundred and fifty barrels of corn from the defend-
ant, to be delivered as specified in the contract in writing,
which is inserted at length in the statement of facts in the first
bill of exceptions, and that one hundred and sixty barrels of

corn were delivered to the plaintiff soon after said contract, and delivery of said negro slave to the defendant, in part payment of said negro slave, and that in pursuance of said contract, the said plaintiff delivered the said negro slave to the defendant, and that the said defendant took and received said negro slave, and exercised acts of ownership over said negro slave as his property; that then the said plaintiff is entitled to recover, although the jury shall believe that no bill of sale was given for said slave, and that the plaintiff knew at the time of said contract, that the defendant intended to remove said negro slave beyond the limits of this State, provided they shall believe that the said plaintiff was in no otherwise than as stated above concerned, acting or assisting in the transportation and removal of said negro slave beyond the limits of this State. Which opinion and instruction the court refused. The plaintiff excepted.

It was then admitted that the parties in this case are the same persons as in the above named case. The plaintiff further proved to the jury that a certain *William Glosser* was sworn as a witness at the trial of the aforesaid case, and that he is now dead. The plaintiff then offered to prove by *James E. Wood*, a competent witness, and who was in attendance at the trial of the former case, that the said *Glosser* swore to the sale and delivery by *Johnson* to *Garrott*, of two hundred barrels of corn, and that said corn was a subject matter of controversy in the former, and is the subject of controversy in the present action, under the issue of *non-assumpsit* and set off. To the admissibility of said evidence to go to the jury, the defendant by his counsel objected, but the court (SHRIVER and T. BUCHANAN, A. J.,) overruled the objection, and admitted the said *James E. Wood* to give evidence to the jury as to the facts sworn to by the said *Glosser* on the former trial, as offered. The defendant excepted.

SECOND EXCEPTION. In addition to the facts and evidence in the first bill of exceptions in this case, which bill of exceptions is to be taken and considered as a part of this bill of exceptions, the plaintiff then further to prove the issue joined on his

part, after *James E. Wood* was admitted by the court to be a competent witness, to prove the facts proposed in the first bill of exceptions, called the said *James E. Wood* upon the stand to give testimony, who testifies as follows: that he was present at the trial of the cause referred to in the first bill of exceptions, and heard *William Glosser*, a witness in that case, testify, and that he swore that *Richard Johnson* the plaintiff, in the year eighteen hundred and thirty-four, sold and delivered to *Barton Garrott*, the defendant, about one hundred barrels of corn, and also, that he delivered to said *Garrott* about one hundred barrels of corn in the year eighteen hundred and thirty-five; but that the said *Glosser*, on cross examination, swore hesitatingly and doubtingly as to the quantity of corn actually delivered, and as to the month, but that it was in the spring of 1834 and 1835, and that there were from 80 to 100 barrels each time; and though said *Glosser* underwent a severe cross examination, he throughout declared that there were two parcels of corn, each of from eighty to one hundred barrels. The said *Wood* further testified, that the said *Glosser* when first examined, testified to the delivery of one hundred barrels of corn only, but that on his second examination he swore to the delivery of something like two hundred barrels of corn; that the said *Glosser* was examined and cross examined for a considerable length of time, and there appeared at times to be considerable confusion in his testimony; that there was much dispute as to the quantity of corn delivered, and the time of delivery; that said *Glosser* testified that the corn was taken from the farm of *Richard Johnson*, on which *James Garrott* resided, and that he helped to load the corn into a wagon of a *Mrs. Garrott*, the mother of the defendant, but that he did not know whether or not the corn was taken to *Barton Garrott;* the said *Wood* further testified, that he could not remember the precise words or language of the said *Glosser* in giving his testimony to all that he did testify to, but he believed that he remembered substantially what said *Glosser* swore to. After said *James Wood* had closed his testimony, the defendant by his counsel objected to the competency of his testimony to go to the jury

for their consideration under the circumstances of this case, but the court overruled the objection, and decided that said testimony was competent and proper evidence to go to the jury. The defendant excepted.

A verdict for $361.59, being found by the jury for the plaintiff below, the defendant *Garrott* brought this appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, CHAMBERS, and SPENCE, J.

PALMER for the appellants, submitted the following points for the consideration of court in this case:

*Under the first bill of Exceptions.* 1st. The evidence of the plaintiff in this case to prove the delivery of a certain quantity of corn, to defendant, to sustain the action in the court below, was not admissible evidence to go to the jury, because the said corn thus proved to have been delivered to sustain said suit, was identically the same corn which was the subject matter of dispute in a former action between the same parties, which fully appears from the record in this case.

2nd. The evidence was inadmissible to prove the delivery of the corn in question to sustain said action, as the said corn was the subject matter of controversy in a former action between the same parties, under a plea of *non-assumpsit* and set off, in which action the plaintiff in this case was the defendant.

3rd. The evidence was inadmissible and not proper to be submitted to the jury, because the record and proceedings in the former action, offered in evidence by the plaintiff, with the admission, that the corn in question was identically the same corn, which was the subject matter of dispute and controversy in the former action between the same parties under the pleadings in the case, was conclusive, and operated as an estoppel to the plaintiff's right of recovery for the same corn in this action.

*The following questions under the second bill of exceptions, are submitted to the Court for determination.* 1st. The facts disclosed by *J. E. Wood,* on his examination, in relation to what

*William Glosser*, the deceased witness, swore to on his examination before the jury, in the case of *Barton Garrott vs.* the said *Richard Johnson*, on the trial of that case, were not competent and proper evidence to go to the jury under the circumstances of the case, the said *Wood* not being able even to give the substance of all the said *Glosser* did swear to in the former trial.

2nd. The testimony of what *William Glosser*, the deceased witness, who was examined upon oath in the former case between the said *Barton Garrott* and *Richard Johnson*, was not admissible and proper evidence to go to the jury, and ought to have been rejected, because *James E. Wood*, the witnees who was present at the trial of the former action and heard him give his evidence, could not recollect the very words of the said *Glosser* in giving his evidence; and because the said *James E. Wood*, in his evidence, did not undertake to repeat precisely the very words of the said deceased witness.

Balch and Worthington for the appellees.

The record in this case presents the question, whether the testimony of a witness who is since dead, in a former trial between the same parties, and where the point in controversy was the same, is admissible in evidence, by proof of one who heard him give evidence on the former trial.

*Points by the Appellee.* 1st. Where the parties are the same, and the point in controversy the same, in the second as the first action, the testimony of a deceased witness in the first action, may be given in evidence in the second, by one who heard him—such evidence is admissible.

2nd. The record of the first action offered on the part of the appellee, does not estop the plaintiff from recovering on the above evidence, unless the fact or claim relied on in this action, was distinctly put in issue, and found by the jury in the former action.

Stephen, J., delivered the opinion of this court.

We do not think, that there is any error in the judgment of the court below, from which this appeal has been taken. Two

bills of exceptions are contained in the record, upon points of evidence, which this court have to decide.   We think that the evidence of *James E. Wood,* as to the facts sworn to, by the deceased witness at the former trial, between the same parties, where the appellant was plaintiff, and the appellee was defendant, was admissible to go to the jury in this case.   There is nothing we think in the record given in evidence by the plaintiff below, to prove, that in the former action between these parties, the corn now in controversy, and for which this suit has been brought, was allowed to the plaintiff on account of his purchase of the negro man, for the price of whom that suit was instituted.   The bills of exceptions shewing that the plaintiff's recovery in that case, for the purchase money of the negro sold, may have been barred upon other grounds, and not upon the ground of the defendant's set off; nor is there any thing in the record to shew, that the plaintiff in that action had any other claim against the defendant supported by proof, to which the corn as a set off could be applied; moreover, it appears to be a principle of law, well established, that to make a record evidence to conclude any matter, it should appear by the record, or by other proof, that the matter was in issue, and decided in that suit.   As therefore, there was nothing to shew, that the plaintiff in this action, had been allowed for the corn in the former suit, we think the evidence in the first bill of exceptions, was by the court below properly admitted to go to jury; more especially, as the defendant in this case, had the full benefit of a cross examination of the deceased witness, at the first trial; and such testimony is admitted upon the ground of necessity, to prevent a failure of justice, which in many cases might take place by its exclusion.

We are also of opinion, that the court below were right in suffering the testimony of *Wood* to go to the jury, as stated in the second bill of exceptions.   There is some contrariety in the decisions, as to the manner in which the testimony of a deceased witness is to be proved, in cases  similar to the present.

In *England* the rule seems to be, that the very words of the

deceased witness must be proved, or the testimony is not admissible.

In some of our sister States, the substance is admitted, and it is held that the very words are not indispensable.

We are of opinion that the rule as established in *England* is too rigid, and exclusive for the purposes of justice; and would in most cases, considering the frailty of the human memory, lead to a total rejection of all such testimony. On the contrary it may, we think with reason and propriety be objected, that to admit the substance, would be too great a relaxation of the *English* rule, and open too wide a door for a safe and due administration of justice. In such cases, we are not disposed to adopt or give our assent to either rule; but to adopt a principle, which while it would be sufficiently protective of the rights of juries to draw inferences, and decide upon the effect of testimony, which seems to be the reason of the rule in *England*, would not be so lax in its operation, as to admit evidence with too much facility on the one hand, or to reject it with too great rigour on the other. We think that for all the purposes of truth and a safe administration of justice, it may be held, that where it is necessary to prove what a deceased witness swore upon a former trial between the same parties, where the issue or matter in controversy was the same, as the one then pending, it is sufficient for the living witness who is called to testify, to prove facts, that is to say, that the witness who is dead, in giving in his testimony deposed to certain facts. Such a rule would be sufficiently restrictive, to exclude the opinion and construction of the witness on the one hand, and not so rigid, as to deprive a party in many instances of the benefit of such testimony on the other. Testing the admissibility of the witness's testimony in this case, as to what was sworn by the deceased witness upon the former trial by this rule, and we think it legally competent and admissible. The witness could not undertake to state the words, or the precise language of the deceased witness in giving his testimony; but it is clear, that in that testimony, as proved by the living witness, nothing is stated to have been

proved by him, but what was strictly a matter of fact, and although there was some uncertainty in the testimony of the deceased witness, as to the quantity of corn sold, his testimony as detailed by the living witness, was still matter of fact only, and the effect of it there as here, was for the jury.

It could not, we think, with any semblance of legal propriety be contended, that if the deceased witness had himself been in the court, and given the testimony which *Wood* gave, it could have been objected to, as incompetent; simply upon the ground, that he swore with doubt and hesitation;| and if not, it is not readily to be perceived, upon what ground such proof would be inadmissible, because given by another who was present when he delivered it, as matter of fact within his own knowledge. We think that the case in 5 *Harr. & John.* 231, sanctions the rule of evidence, which we are disposed to adopt upon the present occasion.

In that case, the court say the evidence given to the jury by the deceased witness, must be proved, and it will not be sufficient, that the witness should give his own inferences, or depose to the legal effect, as the jury alone are competent to draw conclusions of fact from testimony. In that case the defendant below, offered to prove by a competent and legal witness, that when a jury was formerly empannelled to try the case, *Eversfield Bowie*, who had been examined on the survey, who is since dead, and who had been sworn in court on the said trial, proved that the land had been in the possession of, and cultivated by *Fielder Bowie*, for a number of years, and that as far as the witness could remember, he died in the seizin and possession thereof; the court then say, it is most evident then, that the witness was not produced for the purpose of proving the effect of the testimony given by the deceased witness but, to declare on oath, what he did actually prove. In that case it appears he was called to prove, that the deceased witness swore, that the land had been in the possession of, and cultivated by *Fielder Bowie* for a number of years, and that as far as the witness could recollect, he died in the seizin and possession thereof. The living witness *in that case, as in this, it is most*

apparent, was called to prove facts, and not to give his own inferences, and in proving such facts, to declare on oath as the court say, what the deceased witness did actually prove. By the proof of these facts then, the court thought his testimony would not have been obnoxious to the objection of being inferential merely, or only proof of the effect of the evidence, but it would have amounted to testimony of what the deceased witness actually did prove; and if it could be considered as amounting to evidence, of what the deceased witness actually did prove, it would have been clearly competent and admissible. Perceiving no error in the opinion of the court below, we affirm their judgment.

JUDGMENT AFFIRMED.