(Decided December 3rd, 1862.)

---

## James Cecil *vs.* Owen Cecil, *et al.*

Any person, on whose interests any order or decree of the Orphans Court has a tendency to operate injuriously, may appeal therefrom; but such person must show that he has an interest in the subject matter of the decree or decision appealed from.

In matters *in rem.,* such as the *factum* of a will, where solemn proof has

Cecil *vs.* Cecil, *et al.*

been resorted to, the decisions of the Orphans Court are final, if not appealed from; and issues involving the same questions will not be sent a second time.

If a party avails himself of the provisions of the Code, Art. 5, sec. 40, and places himself in a position to appeal, by immediately notifying his intention, and having the testimony reduced to writing, at his expense, he then becomes a party to the record, and may be concluded by it.

It is a well settled principle, that to make the record of a former trial evidence to conclude any matter in issue between the parties, it should appear, by the record or other proof, that the same matter was in issue and decided at the former trial, between the same parties.

Estoppels must be reciprocal, and bind both parties. They operate only on parties and privies in blood or estate, and can be used neither by or against strangers.

All persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings.

Parties, in the larger sense, are all persons having a right to control the proceedings, to make defence, to adduce and cross-examine witnesses, and to appeal from the decision, if an appeal lies; only those, therefore, who have enjoyed all these privileges, collectively, should be concluded by a decision, judgment or decree.

The administrator has no interest in establishing the fact of an advancement, and cannot be said to be a party in interest. It would be hazardous to extend the privity of interest in law, where there is no common interest in fact, and conclude a party in interest by a constructive representation.

Where a petition is filed by one of several distributees, charging certain specific advancements, in cash, notes and negroes, to his co-distributees, who, in their answers, admit the receipt of the money and property, as alleged in the petition, but deny that it was received by way of advancement, and aver and offer to prove matters in avoidance, which are denied by the replication—HELD: That such averment and offer does not so neutralize the admissions, as to render them inoperative to support the presumption of an advancement, arising from a gift of money from a parent to a child.

An answer will not support a matter set up in avoidance or discharge, where the matter of avoidance is a distinct fact. In such case the defence must be proved.

This is an appeal from a *pro forma* order and decree of the Orphans Court for Baltimore city, passed on the 19th day of December 1861, dismissing the petition of the ap-

pellant.   The case is fully stated in the opinion of this Court.

The cause was argued before Bowie, C. J., and Bartol, and Cochran, J.

*A. H. Hobbs,* for the appellant :

The question presented for consideration is, whether a distributee is bound by a proceeding in the Orphans Court between his co-distributees, and to which he was not a party on the record.   The appellant will contend that he was not bound, and that his petition, as an original proceeding, was properly exhibited in the Court below.   There is a striking analogy between the proceedings in the Orphans Court, and in Courts of Equity.   To a great extent they have concurrent jurisdiction.   Having jurisdiction of the same subject matter, and in the main for the same purposes, it reasonably follows, that the practice in the two Courts should be conducted on the same principles.   If this were a proceeding in Chancery, it would be necessary that all persons beneficially interested, should be made parties to the proceeding; for otherwise, full and complete justice could not be done, nor would a multiplicity of suits be prevented.   *Sto. Eq. Pl.,* secs. 72 and 76.   6 *H. & J.,* 14, *Cromwell vs. Owings.*   We contend that the same rule holds good as to the Orphans Court.   It would prove exceedingly oppressive, if a person should be visited with the effects and operation of a decree of Court, in which he had no opportunity to summon witnesses, or to cross-examine those summoned by other parties, and deprived generally of the opportunity of preparing for the investigation of the matter in controversy.   It is for this, among other reasons, that judgments and decrees only bind parties and privies.   2 *Phil. Ev.,* 3, 4, 7 and 9.   4 *G. & J.,* 360, *Shafer vs. Stonebraker.*

Cecil *vs.* Cecil, *et al.*

A distributee is in no sense a privy to the administrator. 1 *Mundf.*, 446. The general proposition will not be denied, that an interested person, not a party to the proceeding, and having no right of appeal, is entitled to bring an original suit in his own name. It is submitted that the special right given by the peculiar phraseology of the Act of 1818, ch. 204, does in no wise abridge or take away the ancient common law right of notice and warning, before judgment passed. The Act of 1818, was intended to extend, not to abridge, the rights of litigants; it was designed to increase and enlarge the facilities of full and thorough investigation, not to silence persons whose interests, it might be, were invaded and violated. Ordinarily, none but parties to the record can appeal; but parties to the record have a voice in the conduct and management of the cause. Here, the right of appeal does not depend upon the general law; it is the creature of a special statute. If a person, whose rights were injuriously affected by a decision of the Orphans Court, should only be permitted to appeal and seek redress in the Appellate Court, from the case made by others, and, it may be, imperfectly prepared, the right of appeal would frequently prove worthless, and of no avail. If the privilege of instituting a new suit should thus be cut off, the Legislature, instead of multiplying, as they supposed they were doing, the means of remedial justice, by passing the Act of 1818, would only have succeeded in disarming the litigant of his common law right.

*Robert C. Barry* and *Thos. Donaldson*, for the appellees:

The Orphans Court properly decided not to hear evidence in regard "to the sums of money charged to have been advanced to them," because that question had been heard and decided on by said Court, in the matter of the petition of *Owen Cecil, et al., vs. Caroline Hooper and Mary Ann*

*Harrington,* (which case is now pending in this honorable Court, on an appeal prayed by James Cecil.) The same issue was embraced and involved in the petition of *James Cecil,* as was heard and determined by the Orphans Court for Baltimore city, in the antecedent petition of *Owen Cecil, et al., vs. Caroline Hooper and Mary Ann Harrington,* and the judgment of the Court below was binding, in so far as that question was concerned. *Pegg, et al., vs. Warford,* 4 *Md. Rep.,* 385. *Warford vs. Van Sickle,* 4 *Md. Rep.,* 397.

The law assumes that every one interested is, in fact, a party in the Orphans Court. Code, Art. 5, secs. 39 and 40. Were not the ends sought to be arrived at, by the petition filed by James Cecil, identical with those set forth in the petition of Owen Cecil and others? If so, the Orphans Court was right in refusing to hear testimony upon the same subject matter on which it had passed judgment. The Courts do not favor litigation, and if each person claiming to have an interest in a case, be allowed to file a petition embracing the same subject matter, after the Court has pronounced on it, when will a case terminate?

Bowie, C. J., delivered the opinion of this Court:

This was a petition filed in the Orphans Court of Baltimore city, by the appellant, on the 25th November 1861, against the appellees, as administrator and next of kin of Wm. Cecil, deceased, charging that Owen Cecil, as administrator, was about to make distribution of his intestate's estate, of which the appellant and appellees were co-distributees; that the defendants had received certain advancements, in cash and negroes, and praying the same might be brought into hotch-pot. The appellees, Owen and William, answered and denied they had received any advancements.

The appellees, Harrington and Hooper, by their answer, insisted that by an order passed by the Orphans Court, in

Cecil vs. Cecil, et al.

the cause of William Cecil, Thomas Owens, and Owen Cecil, adm'r, against the said Harrington and Hooper, on the 27th of November 1861, the question was fully adjudicated and disposed of, they admit the receipt of $4,500, but aver that it was given to them by said deceased for services rendered ; in reference to the negroes, they claim to hold them under bills of sale. To these answers a replication was filed, stating, *inter alia*, that the appellant's petition was exhibited and filed some time before the alleged adjudication in the cause above referred to ; that he was not a party to that cause, not notified or summoned to appear, and, for these causes, was not estopped or concluded thereby. The replication took issue upon the other averments as to advancements.

At the trial of the cause, each party having read his pleadings, the petitioner called his witnesses, and was about to proceed to examine them, when the Court decided they would hear no evidence in regard to the sums charged to have been advanced to Mrs. Hooper and Mrs. Harrington, whereupon the appellant took a *pro forma* decree, dismissing said petition, and prayed an appeal.

The appellant contends he is not bound by proceedings in the Orphans Court, between the co-distributees, to which he was not a party on the record. The appellees insist that the ends sought to be attained by the petition filed by the appellant, were the same with those set forth in the petition of the appellees, and the Orphans Court were right in refusing to hear testimony upon the same subject matter on which it had passed judgment, and the question is, whether the same matter may be inquired into in the Orphans Courts, "*toties quoties*," as there are persons interested. The Courts of this State, in consideration of the peculiar nature of the jurisdiction of Orphans Courts, and the informality of proceedings therein, have held that "any person on whose interests any order or decree of the Or-

phans Court has a tendency to operate injuriously, may appeal therefrom. *Parker & Wife, vs. Gwynn*, 4 *Md. Rep.*, 428. Yet they must show they have an interest in the subject matter of the decree or decision appealed from. *Hoffar vs. Stonestreet*, 6 *Md. Rep.*, 303. In matters *in rem.*, such as the *factum* of a will, where solemn proof has been resorted to, their decisions are final, if not appealed from, and issues involving the same questions will not be sent a second time. *Pegg vs. Warford*, 4 *Md. Rep.*, 385.

The Code, Art. 5, sec. 40, prescribes a mode by which appeals shall be taken in cases of summary proceedings : "If the decree, order, decision or judgment shall have been given or made on a summary proceeding, and on the testimony of witnesses, the party shall not be allowed to appeal unless he shall immediately notify his intention, and request that the testimony be reduced to writing, and in such case the depositions shall be at the cost of the party making the request."

If the party avails himself of the provisions of the Code, and places himself in a condition to appeal, by immediately notifying his intention, and having the testimony reduced to writing, at his expense, he then becomes a party to the record, and may be concluded by it. But as far as the record discloses the facts in this case, it is not shown that the appellant was a party to the cause, the decree in which is relied on as conclusive ; on the contrary, it is manifest it was a decree in a cause in which appellant was neither complainant nor defendant. The answer relies on an order passed by the Orphans Court, in a cause of William Cecil, Thomas Owens, and Owen Cecil, adm'r, against Mary Ann Harrington and Caroline Hooper. The record is not pleaded "*prout patet per recordum*," or made a part of the answer.

It is a well settled principle, that, to make the record of a former trial evidence to conclude any matter in issue between the parties, it should appear by the record or other

proof that the same matter was in issue and decided at the former trial between the same parties. *Jarrett vs. Johnson*, 11 *G. & J.*, 173. Estoppels must be reciprocal, and bind both parties. They operate only on parties and privies in blood or estate, and can be used neither by or against strangers. He that shall not be concluded by the record or other matter, shall not conclude another by it. 8 *Gill*, 247, *Alexander vs. Walter et al. Lessee.*

Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that having been once so tried, all litigation of that question, and between those parties, should be closed forever. It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound. Under the term parties, in this connection, the law includes all who are directly interested in the subject matter, and had a right to make defence, or to control the proceedings and to appeal from the judgment. This right involves also the right to adduce testimony and to cross-examine the witnesses on the other side. Persons not having these rights, are regarded as strangers to the cause. But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings. 1 *Green. Ev.*, secs. 522, 523.

In regard to the decrees and sentences of Courts exercising any branches of *ecclesiastical jurisdiction*, the same general principles govern which we have already stated. The principal branch of this jurisdiction in existence in the United States, is that which relates to matters of probate and administration. And as to these, the inquiry, as in other cases, is, whether the matter was exclusively with-

in the jurisdiction of the Court, and whether a decree or judgment has directly been passed upon it? If the affirmative be true, the decree is conclusive. Where the decree is of the nature of proceedings *in rem.*, as is generally the case in matters of probate and administration, it is conclusive, like those proceedings, against all the world. But where it is a matter of exclusively private litigation, such as in assignments of dower and some other cases of jurisdiction conferred by particular statutes, the decree stands upon the footing of a judgment at common law. 1 *Greenleaf Ev.*, sec. 550.

The preceding citations fully and forcibly announce the general principles which govern judicial tribunals upon the question of "*res adjudicata.*" A cardinal condition is, that the judgment should be between the same parties and upon the same matter directly in question.

"Parties, in the larger sense, are all persons having a right to control the proceedings, to make defence, to adduce and cross-examine witnesses, and to appeal from the decision, if an appeal lies." 1 *Greenleaf Ev.*, sec. 535.

All these privileges (not any one of them) are essential to the assertion and protection of private rights, and the investigation of the truth. Only, therefore, those who have enjoyed them collectively, should be concluded by a decision, judgment or decree. It is true, privies in blood, in law and estate, are governed by the same rule. The petitioner, in this case, not being a party in the larger sense, it remains to inquire whether he is a privy in estate or interest. No one, in this State, can claim a share or interest in the personal estate of an intestate, except through an administrator. It is the administrator's duty to get in the personal estate of the deceased, for distribution.

Advancements, however, do not go into the inventory, and constitute no part of the assets for payment of debts, nor increase the fund on which the administrator's com-

mission is allowed. It is optional with the party advanced, whether he will come into hotch-pot. The administrator has no interest in establishing the fact of advancement, and cannot be said to be a party in interest. It is wholly immaterial to him whether money or other property, given by his intestate, be brought into the settlement or not. The aggregate of the estate, as far as he is concerned, is neither increased nor diminished. In the absence of all motive to protect the rights of the distributees, it would be hazardous to extend the privity of interest in law, where there is no common interest in fact, and conclude a party in interest by a constructive representation.

The petitioner might, by adopting certain preliminaries, had he been notified in time, have entitled himself to the cumulative remedy of appeal; but that right, it has been well said, would be nugatory and nominal, without the right of producing evidence, cross-examining the respondents' witnesses, and controlling the conduct of the cause in such a manner as to enable the Appellate Court to determine whether the decree appealed from was erroneous or not.

The petition in this case charges certain specific advancements, in cash, notes and negroes. The answers of Harrington and Hooper admit the receipt of the amounts specified in the petition, but aver and are ready to prove that said sums were paid in consideration of services rendered. As to the slaves mentioned in said petition, the respondents alleged they held them by bills of sale, copies of which were exhibited. To which answers a replication was filed, denying the services, and declaring the bills of sale were voluntary and without consideration.

In the case of *Stewart vs. Pattison*, 8 *Gill*, 54, the Court said: "If money is delivered by a parent to a child, it will be presumed to be an advancement." Here the allegation of the petition is admitted, that they received certain spe-

v.19

cific sums of money, and certain negroes. Does the qualification annexed, "that they aver and are ready to prove," &c., so neutralize the admissions as to render them inoperative to support the presumption of law, until proof to the contrary is offered? Matter in avoidance, denied by the general replication, must be proved. *Salmon vs. Clagett*, 3 *Bland*, 125,

An answer will not support matter set up in avoidance or discharge, where the matter of avoidance is a distinct fact; in such case the defence must be proved. *Gibson vs. McCormick*, 10 *G. & J.*, 65. These decisions make it obvious the Orphans Court erred in assuming there was no evidence before them to sustain the petition, and whether the same was dismissed upon the plea of *res adjudicata*, or upon the ground of want of evidence, we think the decree below should be reversed, and the cause remanded for further proceedings.

*Decree reversed and cause remanded.*

(Decided December 3rd, 1862.)