JOHN W. ROYSTON, and CAMPBELL B. ROYSTON his Committee *vs.* ALBERT N. HORNER, and VICTORIA ROYSTON.

*Res Judicata—Effect of Decree passed by Consent after Submission upon Bill, Answer, and Exhibits—Equity Practice—Competency of a Lunatic, before being so Declared, to Employ an Attorney—Effect of the Acts of such Attorney.*

On the 6th of April, 1888, J. W. R. filed his bill in the Circuit Court of Baltimore City, to have certain deeds made by him to A. N. H. set aside on the ground of fraud, insufficiency of consideration, and his weakness of mind at the time they were made. After answers filed by the defendants, denying the charges in the bill, but without any testimony being taken, the Court passed the following decree: "This case being submitted on bill, answers, and exhibits by agreement of counsel, it is this 28th day of August, 1889, by the Circuit Court of Baltimore City, and by and with the consent of all parties to the cause, adjudged, ordered, and decreed, that the bill be, and the same is hereby, dismissed, each side to pay their own costs; and it is further adjudged, ordered, and decreed that the receiver heretofore appointed be, and is hereby, discharged without rendering any account, and that A. C. L. administrator of W. L. shall pay to the defendant A. N. H. or to J. P. P. his solicitor, all the accrued ground-rent and interest thereon." Upon this decree was the following indorsement: "We consent to the passage of the decree," signed by the counsel for the respective parties. On a bill subsequently filed by J. W. R. as a lunatic and his committee in the same Court against the same defendants, and asking the same relief as in the former case, a plea of *res judicata* was filed, and the Court passed a decree holding the plea good, and dismissing the bill. On appeal it was HELD:

1st. That the recital in the former decree, "this case being submitted on bill, answers, and exhibits by agreement of counsel," could mean but one thing—that it was submitted for decision in that way.

2nd. That when submitted in that way, the Court, upon the answers of the defendants denying the allegations of the bill, could do nothing but dismiss it; for where a case is submitted on bill and answer all the averments of the answer, whether responsive to the allegations of the bill or in avoidance of it, are to be taken as true.

3rd. That argument was not necessary to make a hearing of the case, for a case is heard when what the parties say in bill and answer is being considered by the Court.

4th. That because of the assent in writing to the decree entered upon it by the parties through their counsel, the decree was not made any the less a decision of the Court that H's title, which had been assailed, was good, and could not thereafter be questioned.

5th. That it was competent for J. W. R., although a lunatic (and before he was so declared) to have an attorney whose conduct of the case would bind him.

6th. That there was no charge of fraud in obtaining the decree pleaded in bar, and without such allegation and proof, the plea of *res judicata* was a flat bar to the subsequent proceeding.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Richard S. Culbreth*, and *H. P. and R. E. Jordan*, for the appellants.

*John Prentiss Poe, Attorney-General*, for the appellees.

IRVING, J., delivered the opinion of the Court.

The question in this case is not complicated with controverted facts. It is single and narrow, but very important. It is simply whether a decree in a former case, the effect of which was, it is claimed, to sustain the validity of certain deeds of John W. Royston, the equi-

table plaintiff in this case, to Albert N. Horner, one of the defendants in this case, is a bar to this suit which is brought to get those deeds set aside.

The bill in this case was filed by a lunatic and his committee under an order of Court in the lunacy proceeding.    It alleges that the plaintiff, John W. Royston, has been found a lunatic, without lucid intervals, by inquisition under a writ *de lunatico inquirendo;* and that he has been so for twenty years before the finding; and that during this period of lunacy, and while a lunatic, he conveyed by deeds to one Albert N. Horner, certain portions of the estate which he (Royston,) acquired by the will of his father, a copy of which will is filed as an exhibit with the bill.    It alleges that he was entitled to a life estate, under the will, in two parcels of ground in the City of Baltimore, yielding an aggregate ground rent of $960 *per annum;* that on or about the 6th day of September, 1884, while in an unsound state of mind he executed a deed to Albert N. Horner for all his interest and estate in a lot on Camden street, which is particularly described in the bill, and also in the exhibit No. 2. The consideration of $2,000, as stated in the deed, is alleged to be false, and that only $780 was actually paid to the grantor; that on the 7th day of July, 1887, the said John W. Royston, being in the same unsound mental condition, (of which the said Horner had full knowledge, and and had been warned,) executed another deed to the said Horner for a consideration stated in the deed of $3,000, the truth of which is denied, for his interest in a lot of ground on Charles street particularly described in exhibit No. 5; and that this lot of ground yielded an annual rental of $700, for which the grantor only received the sum of $675.    The bill also charges that prior to the last mentioned deed, the said Royston had conveyed, viz., on the 4th of May, 1887, to the said Horner, for a consideration named as the loan of some small sums of

Royston *vs.* Horner and Royston.

money, and the further sum of $50 cash, all his interest and estate in expectancy or remainder under his father's will in the event of the death, without issue, of his brothers and sisters, as will appear by exhibit No. 3; which deed is alleged to have been made with the full knowledge of the grantee of the incompetency of the grantor to make it. It is also alleged that Horner afterwards granted this last mentioned interest to Victoria Royston, a sister of John, a copy of which deed duly recorded is filed as exhibit No. 4. The bill charges that Horner, the grantee, after receiving these deeds, up to the time of filing this bill, has received in rent from said properties $4315, (with other rents shortly falling due,) for which he only paid the grantor $1455. The prayer of the bill is that these deeds may be set aside because of the lunacy of the grantor, and that Horner may be required to account for the rents which he has received from said property; and that a receiver may be appointed to collect the rents pending these proceedings.

To this bill Albert N. Horner, one of the defendants, has interposed the following plea: "That heretofore, and before the filing of the bill in this case, to wit, on the 6th day of April, 1888, the plaintiff, John W. Royston filed his bill in this Court against this defendant and one William A. Wade, making substantially the same averments as are contained in this bill, and praying for identically the same relief which is prayed by the bill in this case; that this defendant answered the said bill, and therein denied the material averments therein, and resisted and disputed the plaintiff's right to any relief in the premises; that subsequently the said Victoria Royston was, upon her own petition, made a party plaintiff in said case; and that such other proceedings were had that afterwards, to wit, on the 28th of August, 1889, by a decree passed in the cause, it was adjudged, ordered and decreed that the plaintiff's said bill of com-

plaint be dismissed, as by the said decree, duly signed and enrolled in this Court appears; all of which matters and things this defendant doth aver and plead in bar of the plaintiffs' present bill of complaint, and prays the judgment of this Court whether he shall be compelled to make any further answer to the said bill, and prays to be hence dismissed with his reasonable costs in this behalf sustained." This plea was properly verified by oath of the defendant Horner. This plea does not seem to have been traversed, as it ought to have been, and therefore no issue was joined on it; and no evidence appears to have been taken, yet the Court says in its decree that it was *heard and argued;* and the Court held this plea of *res adjudicata* good and dismissed the bill. If the plea was good, and stated the truth, of course the decree was right, for there was nothing before the Court to the contrary; but we suppose that the case was heard as upon bill and answer, treating the plea as an answer, and the record of the former proceeding, as exhibited with it, for in no other way can we see that the Court would have knowledge of what was done in that case by the parties or by the Court. So treating it we will also consider it.

On the 6th of April, 1888, John W. Royston filed his bill in the Circuit Court of Baltimore City against Albert N. Horner and William A. Wade, in which he alleged that by reason of disease his mind had been greatly weakened, and he had been disqualified and rendered unfit to attend to business; and made easily influenced and controlled by persons in whom he had confidence. He then sets up in his bill that whilst he was in this condition of mind he had been induced to sell to Albert N. Horner his life estate in the Camden street lot, and the Charles street lot, which together yielded a rental of nine hundred and sixty dollars per year, for considerations falsely stated in the deeds, and only in fact

for the gross sum of fourteen hundred and fifty-five dol_ lars. With his bill he exhibits copies of the deeds, which are the same deeds mentioned in the bill in this case. That bill charged that William A. Wade combined and conspired with Horner to cheat and defraud Royston to procure those deeds. He also charged that on the 4th of May, 1887, through various fraudulent statements and promises, they induced him to execute a deed to said Horner for all his contingent interest in the estates of his brothers and sisters in the event of their dying without issue. The bill prayed that all these deeds might be declared .void, and might be set aside, and that a receiver might be appointed to collect the ground-rents; and that Horner might be enjoined from selling or encumbering the property. The defendant, Horner, answered the bill, denying the weakness of mind, which was alleged by the plaintiff, and his inability to attend to business, and the allegations of the bill of insufficient consideration. He also denied that Wade committed any fraud; and Wade answered to the same effect. It appears by the record that Victoria Royston filed an interlocutory petition averring that on the 31st of March, 1885, John W. Royston conveyed to one E. George Mathews the Charles street property on certain trusts, and that afterwards, with the consent of the trustee, Mathews, John W. Royston assigned to Victoria Royston the right to collect the ground-rent of $700 on the property, and claimed that she was the *bona fide* owner of that property, which is the same property claimed by A. N. Horner as mentioned in the bill, and asked to be made party plaintiff in the case, which was done.

Horner and Wade afterwards filed a petition by John P. Poe, their solicitor, alleging that pending the suit John W. Royston, the plaintiff, had assigned his interest to one Mrs. Duncan, and asked for process against

her. This was ordered, and Prudence A. Duncan appeared and answered by Joseph P. Merryman, her solicitor, alleging that the plaintiff's claim was *bona fide*, and that Horner had committed the wrongs alleged against him, and that so believing she had paid Royston the money named for his equitable interest. No testimony appears to have been taken, and on the 28th of August, 1889, the Court, Judge EDWARD DUFFY presiding, filed the following decree: "This case being submitted on bill, answers and exhibits, and by agreement of counsel, it is, this 28th day of August, 1889, by the Circuit Court of Baltimore City, and by and with the consent of all parties to the cause, adjudged, ordered and decreed, that the bill be, and the same is hereby dismissed, each side to pay their own costs. And it is further adjudged, ordered and decreed that the receiver heretofore appointed be, and is hereby discharged without rendering any account, and that A. C. Leonard, administrator of William Leonard, shall pay to the defendant, Albert N. Horner, or to John P. Poe, his solicitor, all the accrued ground-rents and interest thereon." Upon this decree was the following indorsement: "We consent to the passage of the decree. Wm. Pinkney Whyte, for the compl'nts. Chew Snebley, do. John P. Poe, for def'ts. Joseph P. Merryman, for Prudence Anne Duncan." A second indorsement appears as follows: "We assent to the decree as altered." This was also signed by the same solicitors. The record says the alteration consisted in the interlineation of the words, "A. C. Leonard, adm'r of Wm. Leonard" in lieu of the words, "the clerk," which were erased in ink, and the words, "accrued ground-rent and interest," in lieu of "money deposited in bank to the credit to the cause" also erased.

From this full statement of facts it is clear that the subject-matter of the suit in which the decree pleaded

Royston *vs.* Horner and Royston.

in bar was passed is identically the same as the subject-matter of the case we are now considering. In each the subject-matter was the validity of the deeds made by John W. Royston to Albert N. Horner; and the alleged ground of invalidity in each case is the infirmity of mind of the grantor, of which it is charged that advantage was taken by the grantee. In the first case John W. Royston sues Horner and his lawyer, and in the last John W. Royston and his committee sue Albert N. Horner and Victoria Royston. Victoria Royston was also a party to the first suit on her own application. Thus it appears that the subject-matter and parties were undoubtedly the same, and that brings us to the consideration of the question whether the decree in the first suit was a bar to the second. The theory of the appellants is that inasmuch as John W. Royston was of unsound mind when the deeds were executed, they can not be sustained as good and valid deeds, notwithstanding the dismissal of the bill in the former case, which alleged their invalidity. They contend that these deeds were absolutely void, and not voidable only, and that the decree of the Court was not a decision upon the merits declaring them to be valid, but was a simple dismission of the bill in pursuance of an agreement of parties that the plaintiff would abandon his suit. In other words, the appellants contend that the decree was nothing more than a sanctioning of the plaintiff's voluntary withdrawal of his suit. On the other hand the appellee contends that the deeds of the grantor, John W. Royston, were not void, but only voidable, conceding him to have been a lunatic at the time of their execution; that a judgment against him is valid, and that when he sued to get the deeds set aside and his bill was dismissed, it became binding upon him. He relies on the statement of the law in 3*d Robinson's Practice, page* 240; *Freeman on Judgments, page* 123, and the decision of this Court in *Stigers, et al. vs. Brent, et*

*al.,* 50 *Md.,* 214. Judge STORY, in his *Commentary upon Equity Pleading* says in section 793, "A decree or order dismissing a former bill for the same matter may be pleaded in bar to a new bill if the dismission was upon the hearing, and was not in terms directed to be without prejudice. But an order of dismission is a bar only where the Court has determined that the plaintiff had no title to the relief sought by his bill; and therefore an order dismissing a bill for want of prosecution is not a bar to another bill." Mr. *Greenleaf,* in the first volume of his book on *Evidence,* section 529, says: "It is only where the point in issue is determined that the judgment is a bar." He also says "that if the suit is discontinued, it will not bar." He also says in section 530: "It must appear to have been a decision upon the merits." The same doctrine is maintained in *Neafie vs. Neafie,* 7 *Johnson Ch. Rep.,* 4; *Perine vs. Dunn,* 4 *Johnson Ch. Rep.,* 142; and in *Loudenbach vs. Collins,* 4 *Ohio St.,* 260. Numerous authorities in this State also hold the same view. *Shafer vs. Stonebraker,* 4 *G. & J.,* 360; *Garrott vs. Johnson,* 11 *G. & J.,* 182; *Hannah K. Chase's Case,* 1 *Bland,* 220; *Beall vs. Pearre, Adm'r,* 12 *Md.,* 565; *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 183; *Frisby, et al. vs. Parkhurst, et al.,* 29 *Md.,* 65; *Cecil vs. Cecil,* 19 *Md.,* 78; *Whitehurst vs. Rogers,* 38 *Md.,* 5–12; *Walsh and McKaig vs. Chesapeake and Ohio Canal Co.,* 59 *Md.,* 428.

In view of these authorities, appellants contend that the decree, which has been pleaded in bar, can not be regarded as a decision upon the merits so as to conclude them in this suit, as the appellee contends that it does. To settle this contention we must look at the decree, and determine from its phraseology what it was intended by the Court to do, and what it does accomplish; and we must look at the whole decree, and give legitimate effect to all the language which it employs. If the decree had said that by consent of the parties the bill was dismissed,

each party to pay their own costs, it would look as if the Court had not heard the cause at all, and was only giving effect to the plaintiff's wish to abandon his suit; and there would be reasonable ground for holding that the Court had not passed upon the merits of the case. But this is not what the Court says in the decree was done. It says: "This case being submitted on bill, answers and exhibits by agreement of counsel." This can mean but one thing, that it was submitted for decision in that way. And, when submitted in that way, the Court upon the answers of the defendant denying the allegations of the bill, could do nothing but dismiss it; for when a case is submitted on bill and answer all the averments of the answer, whether responsive to the allegations of the bill or in avoidance of it, are to be taken as true. *Thomas T. Wheeler's Estate*, 1 *Md. Ch. Dec.*, 80; *Estep vs. Watkins*, 1 *Bland*, 486; *Contee vs. Dawson*, 2 *Bland*, 264; *Salmon vs. Clagett*, 3 *Bland*, 125. The answers fully denied the equity of the plaintiff's bill, and, unless by proof by at least one witness and pregnant circumstances the allegations of the bill were sustained, he must fail in his suit. The natural inference to be derived from the language of submission, as stated by the Court, is that he was to decide the case, by consent of parties, on the bill, answers and exhibits filed by all parties, and as the rule which we have quoted required, namely, to dismiss the bill, and dissolve the injunction preliminarily granted; and this disposition of the case would, of necessity, require a disposition of the rents which had accrued pending the suit, and were deposited to its credit; and as the parties, with the knowledge that this must be the result, and the only result which could be expected from submission in that way, had agreed that costs should not be required against the plaintiff, but that each party should pay his own costs, the Court carefully inserted in the decree that what it was decree-

ing was decreed by consent of all the parties. Ordinarily the decree on bill and answer which denied the equity, would have been with costs to the defendant, and hence, in departing from the usual decree, it was natural to put in the assent thereto on the part of all the parties. Unless the Court was making a decision upon the case as made, there would be no need for the carefully phrased language of the decree. The decree certainly imports such decision. It may have been without argument, and it is reasonably inferrable that it was; but argument is not necessary to make it a hearing, for it is being heard when what the parties say in bill and answer is considered by the Court. In this case the Court says it decrees on a hearing of that kind, and we can not say that the decree does not import, by its phraseology, that there was such hearing.

The decree received the approval of all the parties, through their counsel, who entered their assent in writing upon the decree, but because of that assent the decree was not made any less a decision of the Court that Horner's title, which had been assailed, was good, and thereafter could not be questioned. Under the ruling in *Stigers' Case*, it was competent for John W. Royston, although a lunatic, (and before he was so declared) to have an attorney whose conduct of the case would bind him. He would be presumed to be competent to employ an attorney, and the attorney would not be presumed to be acting otherwise than fairly and honestly by his client. But appellants contend that *Stigers' Case* has no bearing on this case, because the notes in that case, upon which the lunatic was sued, after he became a lunatic, had been executed when he was confessedly of sound mind. This contention can not be sustained, because when the suit was instituted and defence had to be made, and he needed an attorney to make the defence, he was of unsound mind; and the Court recognized the attorneys and

rendered a judgment. The Court said there was no irregularity in the appearance of the two skillful lawyers who defended the lunatic, for, being of full age the lunatic properly defended by attorney, and the law presumes him of sufficient capacity for that purpose. The Court cites 2 *Saunders' Pleading and Ev.*, 650; 1 *Tidd's Practice*, 92; *Shelford on Lunatics*, (m.,) 396; and *Freeman on Judgments*, 123, *sec.* 152, as authorities in point. They also rely on *Tomlinson's Lessee vs. Devore*, 1 *Gill*, 345, as controlling authority for their jurisdiction to render a judgment against a lunatic duly summoned and appearing by counsel. *Stigers' Case* like the one we consider, was in equity; and there was no charge of fraud in in obtaining the judgment in that case, nor of fraud in obtaining the decree which is pleaded in bar in this case. Without such allegation and proof, as we construe the decree, we cannot but hold that the plea interposed, was a flat bar, and that the decree must be affirmed.

*Decree affirmed, with costs.*