(Decided 2nd July, 1873.)

---

Jesse H. Whitehurst *vs.* James C. Rogers, trading as Coleman & Rogers.

*Pleading and Evidence—Judgments and Decrees—Res Adjudicata—General Verdict—Practice in the Court of Appeals.*

However numerous the questions involved in a suit, if they were tried and decided, the renewal of litigation for any one of the same causes, violates the doctrine of *res adjudicata* as much as if the first suit presented but one issue.

The jury are to inquire under the plea of *res adjudicata*, whether the right asserted or the wrong complained of, is virtually or substantially identical with that involved in the first suit, and this identity is determined not by the pleadings only, but, when submitted to the jury, by parol proof.

The date of the acts charged, does not necessarily affect the operation of the plea of *res adjudicata;* a verdict and judgment between the same parties, used either in pleading or evidence, as a protection in a second suit, is equally conclusive, where the same damages are sought to be recovered, and where different damages are claimed for a posterior violation of the same right. If the same question of right is involved in the second suit, as was determined in the first—whatever distance in time occurs between the acts bringing the right in question—the former decision is effective.

W. had sued R. for an alleged violation of a trade-mark of a patent medicine, and verdict and judgment had been for R. In a subsequent suit by W. against R. for an alleged posterior violation of the same trade-mark, R's counsel in the first suit testified, that the issue there was "whether or not the defendant had the right to put up the medicine as he did," and that "they went before the jury on the simple fact, that R. had the right so to put it up and sell it." HELD:

1st. That this evidence was competent.

2nd. That the right to the trade-mark being the essential point in issue on the former trial, the judgment there against W. was a bar to this action.

Where several issues are presented in a case, and the instruction of the Court as to one of them, the issue raised by the plea of *res adjudicata*, is correct, and the jury find a general verdict for the defendant, it may be inferred, that they found on that issue, and it is unnecessary on appeal by the plaintiff, to review his prayers refused by the Court, which referred to the merits of the case, (as contradistinguished from the plea of *res adjudicata*,) and to the standard of damages.

APPEAL from the Superior Court of Baltimore City.

The facts are stated in the opinion of the Court, which also sets forth so much of the prayers of the appellant and appellee as is necessary to the understanding of the points involved in the decision.

The cause was argued before STEWART, BOWIE, BRENT, MILLER and ALVEY, J.

*Perley R. Lovejoy* and *Henry Stockbridge,* for the appellant.

In regard to the question of *res adjudicata,* the Court below erred in refusing the plaintiff's first, second and seventh prayers, and in granting the defendant's first prayer.

The plaintiff's seventh prayer, is based on the principle that the subsequent date of a similar act constitutes it "a different and distinct trespass," for which an action will lie, and that such action is not barred by former adjudication upon a similar act done at another date. The acts charged in this suit had not been committed, the year of their committal had not yet arrived, when the former suit was brought and decided, and therefore the acts complained of could not be the same in both. The *date,* in continuing or consecutive trespasses, is of the very gist of the action, according to authorities both in England and in the United States.

*In Shadwell vs. Hutchinson,* 4 *Carr. & P.,* 334, Lord Chief Justice TENTERDEN says, "Unless I could say that the grievance *during that time* is the same grievance as the obstructing the light between two *other and earlier dates,* the plaintiff is entitled to recover." So also *Goodrich vs. Yale,* 8 *Allen,* 454 ; *Bigelow on Estoppel,* 133 ; *Shafer vs. Stonebraker,* 4 *G. & J.,* 345, &c.; 2 *Phillips' Ev.* 44, *note* 271.

The four several utterances in the case of *Shafer vs. Stonebraker,* by Judge DORSEY, show how prominent in the mind of the Court must have been the principle that *difference in date constitutes a difference in the cause of action.* *Phillips vs. Berick,* 16 *Johns. R.,* 139 ; *Taylor vs. Carpenter,* 2 *Wood. & M.,* 7 ; *Lentz vs. Wallace,* 17 *Penn. State,* (5 *Harris,*) 415 ; *Richardson vs. City of Boston,* 19 *How.,* 267, 268 ; *Wash. Packet Co. vs. Sickles,* 24 *How.,* 333.

This position is further strengthened by considering that two causes of action are held in law to be the same, only

· when *the same evidence will sustain both actions.* *Hitchin vs.* *Campbell*, 3 *Wilson R.*, 308 ; *and* 2 *Wm. Black. R.*, 778, 827 ; *Martin vs. Kennedy*, 2 *Bos. & P.*, 71 ; *Wadsworth vs. Bentley*, 23 *L. J.*, *Q. B.*, 3 ; *Hunter vs. Stewart*, 31 *L. J. Ch.*, 350, *and Dolphin vs. Aylward*, 5 *Ir. Eq. R., N. S.*, 583 ; 2 *Taylor Ev.*, *sec.* 1512, citing all the above cases, states the present English rule thus : "A convenient and safe test for ascertaining whether or not the judgment in one action should be a bar to another, is to consider *whether the same evidence would or would not sustain both.*" 2 *Phill. Ev.*, 27 ; *Herman's Estop.*, *sec.* 99 ; *Lawrence vs. Hunt*, 3 *Sumner*, 22 ; *Rice vs. King*, 7 *Johns. R.*, 20 ; *Johnson vs. Smith*, 8 *Johns. R.*, 383 ; *Harding vs. Hale*, 2 *Gray*, 400 ; *Edwards vs. Stewart*, 15 *Barb.*, 69 ; *Miller vs. Manice*, 6 *Hill*, 121 ; *Marsh vs. Pier*, 4 *Rawle*, 285.

Applying this test in the present case, it is manifest that the same evidence would not sustain both actions, even if considered only as to differences of date.

The granting of the defendant's first prayer was clearly wrong for the further reason, that it bears a palpable inconsistency on its face ; it presents two grounds on either of which the verdict in the former trial may have been given, as proof to the jury that that verdict was based upon one of those grounds alone ; and further that it was based upon the particular one of those grounds which the cause of the defence required should be established. The two grounds presented are, the right of the plaintiff to the trade-mark, and the violation of that right by the defendant. The particular ground on which the defendant relies, is the first of them. A decision at the former trial as to a violation, would not be in any way conclusive as to another violation, sued on in the second ; while a decision as to the right to the trade-mark in any case would be conclusive as to that right in any other case between the parties.

But that instruction is equally condemned by the rule of law, that "We should make it a criterion of the conclusiveness of the verdict upon such a matter, that it clearly appear that the whole case *turned exclusively upon its decision.*" *Big. on Estop.*, 95; *Lawrence vs. Hunt*, 10 *Wend.*, 85; *Lentz vs. Wallace*, 17 *Penn. State R* , 415.

The instruction, to be consistent with law, should have stated only *one* possible ground for the verdict; the suggestion of two such grounds is fatal to the conclusiveness asserted in the latter part thereof. *Ryer vs. Atwater*, 4 *Day Rep.*, 431; *Shafer vs. Stonebraker*, 4 *G. & J.*, 345.

It is the settled law of Maryland, that where the former verdict is for the defendant, on general issue pleaded, or on presentation of more than one point to the jury as the possible ground of the verdict, such verdict does not decide any particular one of the points involved, and is no bar to the further litigation· of any one of those points.

The points actually before the jury in the former trial can only be learned from the declaration, plea, and instructions to the jury in the former trial. These are the only proper evidences as to what points were there contested and decided. Those papers are direct, clear and full, in stating those points. There is in them no omission to be supplied, and nothing doubtful to be explained; and oral testimony is not admissible to go farther, and *contradict* them. *Miles vs. Caldwell*, 2 *Wall.*, 43, (1864.)

The three points of right, infringement and damage, were stated in the declaration of the former suit, were contested in the evidence, were again stated in the instructions of the Court to the jury, and were argued before the jury, at least by plaintiff's counsel. Under the plea of general issue thereon the verdict for defendent did not affirm either of these points. The question of plaintiff's or defendant's right to the trade-mark in question, did not therefore, by that verdict, become *res adjudicata.*

*Robert D. Morrison,* for the appellee.

Parol testimony as to what had been the actual issue at the former trial, was properly admitted. 2 *Phillips on Ev.,* *4th Am. Edition, pages* 21, 22, &c., (*note* 262, *pages* 45, 46 ;) 2 *Phillips on Ev.,* (*note on page* 124 ;) *Gardner vs. Buckbee,* 3 *Cowen,* 126, 127 ; *Burt vs Sternburg,* 4 *Cowen,* 559 ; *Wood vs. Jackson,* 3 *Wendell,* 27 ; *Wood vs. Jackson,* 8 *Wendell,* 9 ; *Cecil vs. Cecil,* 19 *Md.,* 79 ; *Garrott vs. Johnson,* 11 *G. & J.,* 173.

The appellant's first prayer is vicious because it asks the Court to instruct the jury that unless "the question as to the right to the use of the trade-mark," was the sole question "presented for the consideration of the jury, and tried in the former suit," and that if "any other question were there presented and submitted to the jury," then the verdict in the former suit is no bar to the recovery in this action. Under. this prayer the plaintiff would not be barred even if the jury should find *that the question of right had been tried and decided in the former case,* for this they might find even though other matters had been "presented and submitted" to the jury in the first case.

The second prayer was properly rejected because it presented to the consideration of the jury an unmixed question of law. *Williams vs. Woods, et al.,* 16 *Md.,* 220.

As to the appellant's seventh, and the appellee's first prayer, see *Outram vs. Morewood,* 3 *East,* 366 ; *Shafer vs. Stonebraker,* 4 *G. & J.,* 360 ; *Beall vs. Pearre,* 12 *Md.,* 550 ; *Hughes vs. Jones,* 2 *Md. Ch. Dec.,* 182 ; *Cutler vs. Cox,* 2 *Blackford,* 178, 181.

[The arguments of counsel on both sides on the general doctrine of trade-marks, and on the question of damages, are omitted.—*Rep.*]

BOWIE, J., delivered the opinion of the Court.

The appellant sued the appellee in the Superior Court of Baltimore City, on the 8th of September, 1871, declar-

ing against him originally in two counts, but afterwards, by leave of the Court, adding a third.

The first charges that the appellant, being the manufacturer of a valuable specific, a preparation which at great expense he advertised and caused to be widely known by the name and trade-mark of "Forrest's Juniper Tar," by which it had acquired great reputation, etc., and whereby the appellant had acquired a valuable property in said name and trade mark, etc., the appellee well knowing the same, and disregarding the rights of the appellant at sundry times, between the 4th of February, 1869, and the commencement of the suit, unlawfully infringed said trade-mark, and appropriated said name, and manufactured and sold, under the said name of "Forrest's Juniper Tar," and put up in bottles closely resembling those used by the appellant, and calculated and designed to deceive and defraud the public, a fraudulent and spurious article, calculated to bring The Forrest Juniper Tar, sold by appellant, into discredit, prevent the sales of the appellant, and destroy the reputation of the specific, manufactured and sold by the plaintiff, to the great damage and injury of the appellant.

The second count charged in substance, that the appellant manufactured and sold divers large quantities of a certain valuable specific, called "Forrest's Juniper Tar," which he was accustomed to sell in small oval bottles of a peculiar size and shape, wrapped up and labelled "Forrest's Juniper Tar," which had acquired great reputation, whereby the appellant gained great profit, the appellee on the 4th of February, 1869, and on divers other days and times before, etc., did prepare and make, etc., 25,000 bottles of a compound, in imitation of the specific of the appellant, and did wrap and label the same, with wrappers and labels, bearing the title "Forrest's Juniper Tar," in order to denote it as the genuine specific, and sold the same for his own lucre fraudulently, etc.

The third count charges that the appellant was the proprietor of Forrest's Juniper Tar, and a certain other specific known as "Forrest's preparation from the Oil of Tar," and the appellee, well knowing the same, disregarding the rights of the appellant, on the 4th of February, 1869, and divers other days, etc., did wrongfully, injuriously, etc., prepare, make and sell 25,000 bottles of the last mentioned specific, in fraud of the appellant's right to prepare and sell the same, and put up and label the same, with the labels, etc., of the first mentioned specific, so as to cause the same to bear the same name, with that prepared and sold by the appellant, whereby he caused great interruption and hindrance to the sale of the first mentioned specific, and great loss and injury to the appellant.

To which several counts, the appellant pleaded, first, a former action brought by the appellant against the appellee, "at the trial of which the sole question presented for the consideration of the jury was the question as to the right to the use of the said trade-mark, and the verdict and judgment was for the defendant," which judgment is still in force and of record in said Court.

Secondly, the appellee further pleaded, that the appellant was not the owner of the trade-mark mentioned in the declaration, but that one John M. Forrest was the owner, under whose license and authority the appellee manufactured and sold the said Juniper Tar, under the said trade-mark. On which pleas, issues were joined; it is said in the appellant's brief that the general issue was pleaded, but we find no such plea in the record.

It would seem from the issues joined, the only questions submitted to the jury were, whether in a former action between the appellant and appellee, the appellant sought to recover damages, for infringing the same trade-mark, in the same manner as complained of in this, and in said action, the appellant's right to said trade-mark was

denied by the appellee, and verdict and judgment were rendered therein for the defendant. Secondly, that the appellant was not the owner of the trade-mark, the infringement of which was complained of, but the same belonged to one John M. Forrest.

Three bills of exception were taken by the appellant at the trial below.

The first to the exclusion by the Court of a letter of J. M. Forrest, (designated as the 4th letter) offered by the appellant, but objected to by the appellee. Second. To the admission by the Court of the testimony of John H. Warner, counsel of the appellee in the former trial, to show what were the issues presented and decided in the former trial.

Third. To the refusal of the prayers of the appellant, and granting of those of the appellee, and the instruction of the Court given in place of the appellant's eighth prayer.

The appellant's counsel have made no specific objection in their brief, or argument, (as far as recollected) in this Court, to the rulings of the Court, in the first and second bills of exception.

As to the first, it is apparent that the letter is only an overture for compromise of the disputes between the writer and the appellant; written some time after the alleged mutual release of all contracts, between the appellant and Forrest; and according to the testimony of Rogers, after he had been induced by that release to enter into relations of business with him.

Under these circumstances, the letter, if relevant to the matters in issue, was "*res inter alios*," and therefore properly excluded.

There can be as little doubt as to the propriety of the decision involved in the second bill of exception.

The general principle as to the mode of establishing the identity of the right, or subject decided in a former

action between the same parties, is thus announced by *Greenleaf* in his "*Evidence,*" *section* 532, *part* iii., *ch.* 5.

"When a former judgment is shown by way of bar, whether in pleading or in evidence, it is competent for the plaintiff to reply, that it did not relate to the same property, or transaction in controversy in the action, to which it is set up in bar, and the question of identity, thus raised, is to be determined by the jury upon the evidence adduced. And though the declaration in the former suit may be broad enough to include the subject-matter of the second action, yet if, upon the whole record it remains doubtful whether the same subject-matter were actually passed upon, it seems, that parol evidence may be received to show the truth."

This Court has recognized the rule in *Garrott vs. Johnson*, 11 *G. & J.*, 182, in this language : "Moreover it appears to be a principle of law, well established, that to make a record evidence to conclude any matter, it should appear by the record, *or by other proof*, that the matter was in issue and decided in that suit." *Vide*, also, *Cecil vs. Cecil*, 19 *Md.*, 79.

The former action, verdict and judgment between the appellant and appellee are pleaded with an averment, that the plaintiff and defendant named in the record of the former suit, are the same parties as in this suit, and that the said trade-mark in the declaration in the former suit mentioned, is the same trade-mark mentioned in the declaration of the plaintiff in this suit, and the said plaintiff claims no other or further title or ownership, or right in the said trade-mark than was claimed by him in the former suit; allegations of identity, which could only be established by parol evidence, and on which issues were joined in the cause.

The appellant's counsel in their brief, have divided the questions raised by the third bill of exceptions, which embraces all the prayers of both parties, and the instruc-

tion given by the Court, into two general heads or classes.

1st. The question of "*res adjudicata,*" which is presented by the first, second and seventh prayers of the appellant, and the first of the appellee.

2nd. The merits of the present case—under which he contends the other prayers of the defendant ought not to have been granted, because they are insufficient, uncertain, and contrary to law; and that the Court below erred in its rulings on the subject-matter of the first exception, and the refusal of the remaining prayers of the appellant.

The propositions of the appellant, presented in his first, second and seventh prayers on the subject of "*res adjudicata,*" are as follows, substantially:

1st. If the jury shall find "the question as to the right to the use of the trade-mark of 'Forrest's Medicated Juniper Tar,' was not the *sole* question presented for the consideration of the jury, and tried in the former suit, but other questions were submitted to the jury, the verdict in the former suit is no bar to the plaintiff's right to recover."

2nd. If the jury shall find the third count of the plaintiff's *nar.* in this action, *states a distinct cause or ground of action*, *not stated* in the former suit, the verdict in the former is no bar.

7th If the jury find the wrongful acts charged in the present suit, are charged as being done *at a different date* from those in the former, that difference makes the acts charged, *different and distinct trespasses*, and the verdict in the former suit is no bar.

The plea of "*res adjudicata*" is founded on the maxim, "that it is the interest of the State, there should be an end to litigation," and "no man should be twice sued for the same cause." However numerous the questions involved in a suit, if they were tried and decided, the

renewal of litigation for any one of the same causes, violates these cardinal principles of public policy, as much as if the suit presented but one single issue. *Gratia exempli*, a plenary proceeding is instituted in the Orphans' Court, impeaching the validity of a will, and issues involving the *factum*, the sanity of the testator, undue influence, importunity, etc., are sent to a Court of law for trial, all or any of which are found by the jury "*pro or con*," and a decree rendered by the Orphans' Court, pursuant to the finding; could it be said, that because several questions, or issues were presented, the verdict and judgment thereon, should not be binding "*pro tanto?*"

So in the case of an action of replevin, where several issues may be joined, property in the defendant, property in a stranger, etc.; if the finding is for the plaintiff, although several other questions may have been presented, the verdict and judgment are not less conclusive between the parties. Where the point was directly in issue in the former case, and determined upon its merits, whether there was but one or several points, the verdict and judgment thereon are equally decisive.

The second prayer of the appellant, asserts that if the jury find the declaration of the plaintiff *states* a distinct cause or ground of action, not stated in the former; and the seventh, that if the wrongful acts charged in the present suit, are laid as of a different date, the verdict and judgment are not conclusive.

These propositions, although not so designed, are evidently calculated to evade the rule of law, which prohibits vexatious litigation. If it is sufficient *in a second* case, to *state* a distinct cause of action, or lay the trespasses on different days, from those previously stated or charged, the rule would be nugatory.

The jury are to inquire under the plea of former recovery, or "*res adjudicata*," whether the right asserted,

or the wrong complained of, is virtually the same, or identical, substantially with that involved in the first suit.

This identity is determined not by the pleadings only, but when submitted to the jury, by parol proof; it would be wholly illusory to make the identity of a cause of action depend on the form of pleading instead of the facts given in evidence.

The date of the acts charged does not affect the operation of the plea of "*res adjudicata,*" necessarily, inasmuch as a verdict and judgment between the same parties, whether used in pleading or evidence, is equally conclusive, when relied on as a protection in a second suit, where the same identical damages are sought to be recovered, and where different damages are claimed *for a posterior violation* of the same right: *Shafer vs. Stonebraker*, 4 *G. & J.*, 359.

It is not the *same act* that is passed upon always in a case of former recovery ; but if the same question of right is involved in the second case, as was tried and determined in the first, whatever distance in time occurs between the acts, bringing the right in question, the former decision is equally effective. The case of Shafer and Stonebaker does not we think sustain the propositions set out in the plaintiff's (appellant's) prayers. The Court in that case was considering the legal sufficiency of the defendant's plea of a former verdict and judgment between the same parties, *as an estoppel*, to which a special demurrer was filed, and they held it defective in form for want of the conclusive "*prout patet per recordum.*"

In the course of the Court's opinion, the learned Judge delivering it, commented on the difficulty of ascertaining from the record as such, the identity of the question decided in a case, as in that before him, where the general issue was pleaded ; he pointed out the numerous grounds not affecting the right, on which the verdict and

judgment might be rendered, and argues that "All these questions were open for their consideration, under the pleadings in the cause, and on which of them their verdict was founded, the record furnishes us no guide to discover. No matter of fact or right, therefore, having been distinctly put in issue on the former trial, the *finding of the jury and judgment* of the Court, form no *estoppel* to recover in the subsequent action." After reviewing the leading English cases on the subject, he says: "If the technicalities incident to pleadings by way of *estoppel*, and the diversity of effect as regards conclusiveness, when a verdict and judgment in a former suit are relied on as a bar, by way of plea or as evidence, be applied to cases where the second suit is not only predicated upon the same right, but upon the same identical cause of action, being for the recovery of the same damages, that necessary and wholesome principle of the common law, '*nemo debet bis vexari pro eadem causa*,' so highly approved of by the most distinguished jurists of ancient and modern times, becomes in its operation for all purposes of practical utility, almost a dead letter."

"It is no longer true, in one out of one hundred actions on the case, or in *assumpsit*, that a verdict and judgment in a Court of law, is a bar *by way of estoppel* to a subsequent suit, between the same parties for the same demand. In those forms of action, it is matter of rare, rather than usual occurrence, that any matter of fact or of right is so distinctly put in issue, by the pleadings, as to be pleadable *by way of estoppel*, in a subsequent suit, according to the strong and comprehensive expressions met with in the commentaries upon the law of pleadings and evidence; in the works of Chitty, Archbold, Saunders and Starkie, no discrimination is made, whether used in pleadings, or as evidence, between the conclusiveness of verdicts and judgments, when relied on as a protection in a second suit, where the identical damages are sought to

be recovered, *and where different damages are claimed for a posterior violation of the same right.*" 4 *G. & J.,* 358, 359.

The decision concludes with the enunciation of the general rule, that a verdict and judgment *upon the merits,* in a former suit, is in a subsequent action 'between the same parties, where the cause of action, damages or demand is identically the same, conclusive against the plaintiff's right to recover, whether pleaded in bar or given in evidence under the general issue, where said evidence is legally admissible; and that such prior verdict and judgment need not be pleaded by way of estoppel. This decision does not warrant the conclusion of the appellant, which is a summary of his foregoing prayers, viz : " that it is the settled law of Maryland, that where the former verdict is for the defendant, on the general issue pleaded, or *on presentation of more than one point to the jury,* as the possible ground of the verdict, such verdict does not decide any particular one of the points involved, and is no bar to the further litigation of any one of those points," but affirming that the verdict and judgment is conclusive, if the issue involved those points, and their identity is established, decides that the *record per se,* pleaded *as an estoppel,* is not sufficient to prove what was in issue, so as to conclude the plaintiff. The direct question before the Court was, the sufficiency of the plea upon demurrer. If the plea had been good, the demurrer would have brought up the question, what point had been decided in the former suit, as appeared by the record, which would have been tried by the Court and not by the jury.

It was necessary therefore to operate as an estoppel in law, that the record should show what questions were adjudicated and determined.

Taylor says, " that neither a judgment '*inter partes,*' nor a deed, will operate *conclusively* as an estoppel, unless

the matter of estoppel, appears on the record, and is met by demurrer, nor unless it has been expressly pleaded by way of estoppel, at least, where. an opportunity of so pleading it has been afforded." 1 *Taylor's Evidence*, sec. 79, (6th *Edition.*) But in America, (according to *Greenleaf*,) the weight of authority is in favor of the conclusiveness of a judgment, when given in evidence, although not pleaded by way of estoppel, and cites *Kilheffer vs. Herr*, 17 *Ser. & R.*, 325, 326 ; *Shafer vs. Stonebraker*, 4 *G. & J.*, 345 ; *Cist vs. Zeigler*, 16 *S. & R.*, 282 ; *Betts vs. Starr*, 5 *Conn.*, 550, 553 ; and *Marsh vs. Pier*, 4 *Rawle*, 288, 289, in which the point is said to have been forcibly argued in the opinion of KENNEDY, J., which is particularly referred to in a note :—*Vide* 1 *Green. Ev.*, sec. 531, note 4.

It is not necessary to the conclusiveness of the former judgment, that issue should have been taken on the precise point, which is controverted in the second trial ; it is sufficient, if that point was essential to the finding of the former verdict. 1 *Greenleaf's Ev.*, sec. 534. The appellee's witnesses testify, that the issue in the former case was, "whether the appellee had the right to put up the medicine as he did," "they went before the jury on the simple fact, that Mr. Rogers had the right so to put it up and sell it." This position negatived the right of the appellant to the exclusive ownership of the trade-mark, and put in issue, a fact essential to the appellant's right to recover. Thus, where it was made to appear by competent evidence, that the right to the trade-mark, was the essential point in issue on the former trial and found against the appellant, he could not be permitted to put the same question in issue a second time, against the same defendant, upon the ground of a *posterior violation*, the cause of action involving as a necessary element, the existence of the right in the plaintiff, which the jury had negatived in the former suit.

Whitehurst *vs.* Rogers.

The appellee's first prayer, is the converse of the several propositions, contained expressly, or impliedly in the appellant's first, second and seventh ; it summarizes the several particulars, necessary to establish the evidence of identity in the right, or question at issue in the first and second actions, and upon the hypothesis, that the jury find these particulars, "and *that no other question was disputed and litigated in the said former case,* between the said plaintiff and defendant, but the right of the said plaintiff, to the use of the trade mark, and other alleged violation thereof by the defendant, and that in said former suit, the verdict and judgment were for the defendant," it concludes, that the said verdict and judgment constituted a bar to the plaintiff's recovery.

The instructions of the Court below, on the first issue, being in our judgment, sustained by principle and authority, and a general verdict, having been found from which it may be inferred, the jury found for the defendant on that issue, it is unnecessary to review the several prayers of the appellant, referring to the merits of the case, (as contradistinguished from the plea of "*res adjudicata,*") and the standard of damages.

The judgment of the Court below will be affirmed.

*Judgment affirmed.*

(Decided 3rd July, 1873.)