# FRANKLIN COUNTY *v.* GERMAN SAVINGS BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 1234.  Submitted November 23, 1891. — Decided December 14, 1891.

Where a court, having complete jurisdiction of the case, has pronounced a decree upon a certain issue, that issue cannot be retried in a collateral action between the same parties, even although the evidence upon which the case was heard be sent up with the record.  *Brownsville* v. *Loague,* 129 U. S. 493, examined and explained.

The court stated the case as follows:

This was an action by the German Savings Bank of Davenport, Iowa, upon 128 coupons cut from bonds issued by the county of Franklin in payment of its subscription to the capital stock of the Belleville and Eldorado Railroad Company.   The allegation of the declaration was that such bonds

had been issued on the 10th day of November, 1877, by the said defendant, " being thereunto duly authorized by an affirmative vote of the legal voters of said county, as required by law." There was a further averment that plaintiff became the owner of twenty of these bonds, whose numbers were given, from which the coupons in suit had been cut. To this declaration a plea of *non assumpsit* and a replication thereto were filed. A jury being waived, the cause was tried by the court, which found in favor of the plaintiff, and a judgment was rendered on February 4, 1891, in its favor for the sum of $5120, damages and costs. The bonds purported on their face to have been " issued under the provisions of an act of the General Assembly of the State of Illinois, entitled ' An act to incorporate the Belleville and Eldorado Railroad Company,' approved February 22, 1861, authorizing subscriptions to the capital stock of said railroad, and in accordance with the majority of votes cast at an election held in said county on the 11th day of September, 1869, in conformity with the provisions of said act."

Upon the trial of the case, the plaintiff bank, after presenting the bonds and coupons set forth in the declaration, put in evidence the record of a suit in equity, begun in the same court, and carried to a final decree on July 3, 1883. The bill was originally filed by the county of Franklin in the Circuit Court of Franklin County, Illinois, on the 4th day of August, 1880, against the Belleville and Eldorado Railroad Company, the clerk, sheriff and collector of said county, the auditor of public accounts of the state of Illinois, the state treasurer of Illinois, several private individuals, and the unknown holders of bonds issued by the said Franklin County in aid of the said railroad company. The bill alleged the issuing by the county of $150,000 of its bonds, dated November 13, 1877, to the Belleville and Eldorado Railroad Company; $100,000 of which were subscribed and issued under the act of the General Assembly of Illinois, entitled, " An act to incorporate the Belleville and Eldorado Railroad Company," approved February 22, 1861, authorizing a subscription to the capital stock of said company, and $50,000 of which were subscribed and

issued under an act of the general assembly, entitled, "An act to authorize cities and counties to subscribe stock to railroads," approved November 6, 1849. The bill alleged that both classes of bonds were subscribed and issued in pursuance of the vote of the people of the county at an election held the 11th day of September, 1869; and that the order of the county court submitting the proposal to the voters named certain conditions to be complied with before the bonds should be issued, one of which was that the railroad should be commenced in the county of Franklin within nine months from the date of the election, and completed through the county by the 1st day of June, 1872. The bill further alleged that the orders submitting the question to the voters were never complied with, and particularly that the road was not completed within the time provided; that all of the orders and resolutions of the county court and the board of supervisors subscribing, and attempting to subscribe, stock to said railroad company were in conflict with the constitution of the State, and were void; that the state auditor had no right to levy taxes for the purpose of paying the principal or interest of said bonds; that the state treasurer had no right to receive or pay out the same; and that the act to provide for paying railroad debts by counties, approved April 16, 1869, was unconstitutional, contrary to public policy, and void. The bill prayed an injunction restraining the officers of the State from collecting or paying out taxes in liquidation of said bonds, and that the individual defendants and unknown holders of the bonds be enjoined from suing the county upon any of the coupons attached to such bonds.

A temporary writ of injunction was issued as prayed. Service by publication was made upon the unknown holders of the bonds. Upon the 27th day of October, 1880, a decree was taken by default. At the October term, 1881, the German Savings Bank appeared in the cause, had the decree opened, and removed the case to the Circuit Court of the United States for the Southern District of Illinois, to which it was submitted upon proofs taken, and upon a stipulation that the defendant was the *bona fide* holder of the bonds set up in its answer, and

purchased the same for value without notice of any defence. The answer of the bank, which was also adopted by other defendants intervening for their own interests, put in issue every material averment of the bill, and prayed that, as to the bonds and coupons held by it, the bill might be dismissed. for want of equity and the injunction dissolved. On July 3, 1883, a decree was entered declaring that all bonds involved in the case, and purporting on their face to have been issued under the provisions of the Railroad Act of November 6, 1849, were issued without authority of law, and were, therefore, void, and decreeing that, as to the holders of such bonds, the injunction be made perpetual. The decree further provided that, as to the specific bonds designated by their numbers, and among others the bonds belonging to the German Savings Bank, "purporting on their face to be of the series issued under the charter of the said Belleville and Eldorado Railroad Company, approved February 22, 1861, the court doth decree in favor of said defendants, the said several respective holders thereof, and that the said several bonds and the coupons thereof are valid and legal obligations against the county of Franklin; and as to said last-mentioned series of said bonds and coupons thereunto attached, as held as aforesaid, the court doth decree that the injunction issued in this cause be dissolved, and complainant's bill be dismissed for want of equity."

The German Savings Bank in June, 1885, appealed from so much of. this decree as adjudged that nine bonds, which had been issued under the act of 1849, and were held by the bank were void, and upon such appeal this court affirmed the decree of the Circuit Court. *German Savings Bank* v. *Franklin County*, 128 U. S. 526. The county of Franklin, however, did not appeal from the decree establishing the validity of the bonds issued under the act of 1861.

After the plaintiff had put in the said record, decree and mandate of this court, in the equity case, it introduced in evidence the eighteen bonds which, with the coupons thereof, had been decreed to be valid and legal obligations against the county, and also put in evidence coupons cut from two other bonds which had also been adjudged to be valid. The defend-

ant introduced no evidence, but claimed that the evidence contained in the record introduced by the plaintiff showed that the bonds and coupons therefrom, upon which this action was brought, were invalid.   The plaintiff contended that the validity of said bonds and coupons had been established in the said equity case, and that the question was *res adjudicata,* and the court so decided.   To reverse the judgment of the Circuit Court in this behalf, this writ of error was sued out.

*Mr. Daniel M. Browning* and *Mr. William S. Cantrell* for plaintiff in error.

Municipal bonds in Illinois, issued since the adoption of the constitution of 1870, are *prima facie* invalid, and the burden of proof rests upon the plaintiff to show affirmatively that they were authorized by a vote of the people prior to that time. *Jackson County* v. *Brush,* 77 Illinois, 59 ; *People* v. *Jackson County,* 92 Illinois, 441 ; *People* v. *Bishop,* 111 Illinois, 124; *Prairie Township* v. *Lloyd,* 97 Illinois, 179; *Eddy* v. *The People,* 127 Illinois, 428 ; *McClure* v. *Oxford Township,* 94 U. S. 429 ; *Buchanan* v. *Litchfield,* 102 U. S. 278.

Bonds issued after the time fixed by the vote expires, and after the adoption of the constitution of 1870, are void, even in the hands of innocent purchasers.   *German Savings Bank* v. *Franklin County,* 128 U. S. 526; *Richeson* v. *The People,* 115 Illinois, 450 ; *Eagle* v. *Kohn,* 84 Illinois, 292 ; *Eddy* v. *The People, supra.*

When a decree has been rendered that is not self-executing and the beneficiary thereof again goes into court for a complete remedy, the latter court will not enforce the decree if it appears erroneous.   *Wadhams* v. *Gay,* 73 Illinois, 415. Where the payment of judgments rendered upon municipal bonds issued to a railroad company was sought to be enforced by a petition for a mandamus, and it appeared that the bonds upon which the judgments were rendered were issued without authority of law, the petition was denied.   *Brownsville* v. *Loague,* 129 U. S. 493.   There is no allegation in any of the pleadings in this case invoking the doctrine of estoppel or *res*

*judicata,* but the evidence introduced by the defendant in error was for the purpose of proving what the law required it to prove, that the bonds were issued under existing laws, and were authorized by a vote of the people of the county prior to the adoption of the constitution; and this evidence having shown that they were not so issued, but were void, the court should have found for the plaintiff in error.

A party cannot present evidence to a court, thus vouching for its being true, and then ask the court to disregard such portions of it as he may deem to be unfavorable to him.

*Mr. E. E. Cook* and *Mr. Samuel P. Wheeler* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

As both parties claim an estoppel by virtue of the decree in the equity suit between the parties to this suit, it only becomes necessary to consider the effect of this decree. It contains two separate and distinct findings: First, so far as the nine bonds held by the German Savings Bank, and issued under the act of November 6, 1849, were concerned, the decree pronounced them to be void, and as to them the injunction was made per petual. From this part of the decree the bank appealed to this court, by which the decree was affirmed. 128 U. S. 526. Second, as to the eighteen bonds issued under the act of 1861, and the coupons cut from two other bonds issued under the same act, also held by the German Savings Bank, and purporting on their face to be of the series issued under the charter of said Belleville and Eldorado Railroad Company, approved February 22, 1861, the decree adjudged in favor of the defendant bank, and that the said several bonds and the coupons thereof were legal and valid obligations against the county of Franklin, and as to this series the injunction was dissolved and the complainant's bill dismissed. No appeal was taken from this part of the decree by the county of Franklin, but it now insists that these bonds are void for the same reasons that the bonds issued under the act of November 6, 1849, were adjudged

to be void, namely, because both series were issued pursuant to the same vote and subject to the same conditions.

The record of the equity suit does not show clearly the ground upon which the court based its distinction between the two classes of bonds; nor is it necessary to be ascertained here. It is sufficient for the purposes of this suit to know that the validity of these bonds was directly put in issue by the pleadings, and determined adversely to the county. The plaintiff alleged in its bill that these bonds were invalid by reason of the non-compliance of the road with certain conditions precedent upon which they were issued, setting up with great particularity all the proceedings prior to the issue of the bonds; reciting the laws under which they were claimed to have been authorized; and demanding their cancellation and surrender upon the ground that the acts of the county officers were unauthorized and void, and the laws under which they were issued unconstitutional. The entire question of their validity was presented and tried upon the merits, and the court could not have dismissed the bill as to these bonds without holding that they were valid, and the further finding that the several bonds and coupons thereof " are valid and legal obligations " added nothing to the force of the decree dismissing the bill.

The defendant's position in this connection is, that as the entire record taken together shows that these bonds were void, this court ought not to treat the decree of the court below, adjudging them to be valid, as *res adjudicata*. It is true that there are certain authorities to the effect that, in the case of deeds, if the truth plainly appears on the face of the deed, there is, generally speaking, no estoppel, meaning simply, as stated by Mr. Bigelow, (Bigelow on Estoppel, 351,) " that all parts of the deed are to be construed together; and that if an allegation in the deed which alone would work an estoppel upon the parties is explained in another part of the deed, or perhaps another deed to which reference is made for the purpose, there is ordinarily no estoppel." Lord Coke also states certain exceptions to the conclusive effect of records, one of these being, " where the truth appears in the same record, as

where the defendant is sued by the wrong name and enters into a bail bond *prout* the writ, as he must, and then put in bail by his right name, he who was arrested is not estopped from pleading in abatement; or where the record shows that the judgment relied on as an estoppel has been reversed in error." But we know of no case which goes to the extent of holding that where a court having complete jurisdiction of the case has pronounced a decree upon a certain issue, such issue may be retried in a collateral action, even although the evidence upon which the case is heard is sent up with the record. If this were possible, then in every such case where a judgment or decree is pleaded by way of estoppel, and the record shows the evidence upon which it was rendered, the court in which the estoppel was pleaded would have the power to retry the case, and determine whether a different judgment ought not to have been rendered. The case of *Brownsville* v. *Loague*, 129 U. S. 493, 503, 505, has perhaps gone as far in the direction indicated by the defendant as any case reported in the books, but it is far from being an authority for the position assumed here. That was a petition for a mandamus to enforce the collection of judgments of a Circuit Court upon certain bonds which this court had held to be invalid. The court denied the application of the relator upon the ground that, in his pleadings, he did not rely exclusively upon the judgments, but opened the facts which attended the judgments for the purpose of counting upon a certain act of the legislature as furnishing the remedy which he sought, and that by so doing he in effect asked the court to order the levy of a tax to pay the coupons, and relied upon the judgments principally as creating an estoppel of a denial of the power to do so. " Thus invited," said the Chief Justice, " to look through the judgments to the alleged contracts on which they are founded, and finding them invalid for want of power, must we nevertheless concede to the judgments themselves such effect, by way of estoppel, as to entitle the plaintiff, *ex debito justitiæ*, to a writ commanding the levy of taxes under a statute which was not in existence when these bonds were issued ? . . . But where application is made to collect judgments by pro-

cess not contained in themselves, and requiring, to be sustained, reference to the alleged cause of action upon which they are founded, the aid of the court should not be granted when upon the face of the record it appears, not that mere error supervened in the rendition of such judgments, but that they rest upon no cause of action whatever." This, however, does not touch the question of the binding effect of judgments when offered in evidence in a distinct and collateral action. We know of no case holding their probative effect to be anything else than conclusive. Had the plaintiff county desired further to test the validity of these bonds, it was its duty to have appealed from this decree, as did the bank with respect to the bonds which that court held to be invalid, when the question of the validity of both issues could have been heard and determined by this court.

There was no error in the finding of the court below, and its judgment must be

*Affirmed.*