SOUTHERN MINNESOTA RAILWAY EXTENSION CO. v. ST. PAUL & S. C. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1893.)

No. 203.

1. RES JUDICATA—APPLICATION—DIFFERENT CAUSE OF ACTION.
   Although a second suit between the same parties is upon a different claim or demand, the prior judgment constitutes an estoppel as to matters actually put in issue, or points controverted, upon the determination of which the finding or verdict was rendered. Cromwell v. Sac Co., 94 U. S. 351, followed.

2. SAME—EXTENT OF ESTOPPEL—FINDINGS OF FACT AND LAW.
   The estoppel arising from a finding in a previous suit between the same parties is not confined to matters purely of fact, or of mixed fact and law, but extends to a decision of the legal rights of the parties on a state of facts common to both suits, although the causes of action are different.

3. SAME—MATTERS DECIDED—HOW SUSTAINED.
   On a plea of res judicata, where the former judgment was rendered pursuant to the findings and conclusions of a referee, the court may examine the entire report of such referee, as well as the pleadings, for the purpose of ascertaining what issues were in fact raised and decided, and upon what theory the former judgment proceeded.

4. SAME—SUIT TO RECOVER LANDS—SUFFICIENCY OF DESCRIPTION.
   In a suit in a state court by one land-grant railroad company against another to recover lands lying within overlapping grants, the bill designated the lands sued for as the odd-numbered sections lying within 20 miles of its route within specified ranges and townships, and there was annexed to the bill a diagram alleged to be a correct map of complainant's road through such townships and ranges. There was nothing to show that during the progress of the suit any question had ever been raised as to the sufficiency of the description. *Held,* that in a subsequent suit in a federal court to recover the lands the plea of res judicata could not be avoided on the ground that the record in the prior suit did not show that the same lands were then sued for.

5. SAME—MATTERS WHICH MIGHT HAVE BEEN PLEADED.
   The second suit being based upon the ground that as the lands lay within the defendant's indemnity limits, and within complainant's grant limits, the full equitable title passed to complainant as of the date of its grant, the plea of res judicata could not be avoided on the theory that the former suit was based entirely on an alleged fraud by defendant in constructing its road through the overlapping region on a route somewhat different from that indicated in its original map of definite location; for as the suit was between the same parties, and to recover the same lands, the estoppel applied to all grounds of action which might have been pleaded in the former suit. Cromwell v. Sac Co., 94 U. S. 351, followed.

6. SAME—MATTERS ACTUALLY LITIGATED.
   In the prior suit the referee found as a fact that all the odd-numbered sections within defendant's indemnity limits throughout the overlapping

region were withdrawn from sale prior to the date of plaintiff's grant; and, as a conclusion of law thereon, held that such withdrawal operated to exclude such lands from plaintiff's grant. In the second suit there were claimed, in addition to the lands before demanded, certain other lands lying within defendant's indemnity limits. *Held*, that as to these additional lands the prior judgment also constituted an estoppel, the matters found having been actually litigated in the prior suit.

7. LACHES — WHAT CONSTITUTES.

Defendant, a land-grant railroad company, having finished its road, laid claim to certain lands lying within its indemnity limits to make up for deficiencies arising from prior reservations within its grant limits. This claim was conceded by the United States and by the state through which the grant was made, although the lands lay within a subsequent overlapping grant to complainant railroad company. The lands were accordingly certified to the state, which between 1867 and 1876 patented the same to defendant. Plaintiff took no steps to claim the land until 1880, when it brought suit in a state court, which suit was dismissed in 1883. Nothing further was done till 1887, when the present suit was begun to recover the same lands. *Held*, that the claim was barred by laches. Railroad Co. v. Sage, 49 Fed. Rep. 315, 1 C. C. A. 256, 4 U. S. App. 160, followed.

Appeal from the Circuit Court of the United States for the District of Minnesota.

In Equity. Bill by the Southern Minnesota Railway Extension Company against the St. Paul & Sioux City Railroad Company, the Sioux City & St. Paul Railroad Company, and Amherst H. Wilder and Alexander H. Rice, trustees, to determine the title to certain lands, and for an accounting as to lands wrongfully sold by defendants. The court below dismissed the bill, and complainant appeals. Affirmed.

Statement by THAYER, District Judge:

On the 29th day of May, 1892, the appellant filed its amended bill of complaint in the circuit court of the United States for the district of Minnesota to obtain an adjudication that the appellee had wrongfully acquired the legal title to certain lands which of right belonged to the appellant, and to divest the appellees of the title so obtained, and to compel them to account for the proceeds of all lands thus wrongfully acquired which had been sold to innocent purchasers previous to the filing of the bill. Both of the parties to the suit claimed the lands under certain acts of congress granting lands to the state of Minnesota to aid in the construction of railroads within that state. The appellant is a Minnesota corporation, and is the successor in interest of the Southern Minnesota Railroad Company. The title preferred by the appellant to the lands in controversy is as follows: First. An act passed by the legislature of the state of Minnesota on March 4, 1864, creating the Southern Minnesota Railroad Company, and pledging to it all such lands as congress might thereafter grant to the state in aid of building the railroad which the last-mentioned company was authorized to construct. Edgerton, R. R. Laws Minn. 478–492. Second. An act of congress approved July 4, 1866, (14 Stat. 87,) granting to the state of Minnesota five alternate sections of land per mile on each side of the road to aid in building a railroad from Houston, in Houston county, Minn., westwardly through certain counties of the state to the western boundary thereof, which was the line of road, as it is claimed, that the Southern Minnesota Railroad Company was authorized to build. Third. An act of the legislature of the state of Minnesota, approved February 25, 1867, accepting the grant last aforesaid, and conferring the same upon the Southern Minnesota Railroad Company. Edgerton, R. R. Laws, 497. Fourth. The filing of maps of definite location, and the subsequent completion by the appellant of the railroad in question from Houston to the western boundary of the state.

The appellees are the successors in interest of a corporation styled the Minnesota Valley Railroad Company. The title which they prefer to the lands in controversy is as follows: First. An act of the legislature of the state of Minnesota creating the Minnesota Valley Railroad Company, and conferring upon it all the rights of the state of Minnesota in and to certain public lands theretofore granted by the United States to the territory of Minnesota, to aid in building a railroad across the then territory, from St. Paul and St. Anthony southwesterly to the Iowa state line, in the direction of the mouth of the Big Sioux river. Edgerton, R. R. Laws Minn. 486. Second. The act of congress of March 3, 1857, last referred to, (11 Stat. 195,) granting to the territory every alternate section of land designated by odd numbers, for six sections in width, on each side of the projected line. Third. Another act of congress, approved May 12, 1864, (13 Stat. 72, 74, § 7,) granting to the state of Minnesota four additional sections of land per mile in aid of building the aforesaid railroad from St. Paul and St. Anthony to the Iowa line. Fourth. The filing of maps of definite location, and the completion of the railroad in question, by the Minnesota Valley Railroad Company and its successors in interest.

The appellees finished the construction of the road running in a southwesterly direction across the state from St. Paul and St. Anthony, which the Minnesota Valley Railroad Company had been authorized to build, by June 1, 1872. The appellant's road from Houston to Winnebago City, a distance of 149 miles, was built and put in operation about January 1, 1871, but the remaining portion thereof, from Winnebago City to the western boundary of the state, a distance of 130 miles, was not completed until December 8, 1879.

It was provided, in substance, in the act of congress of March 3, 1857, under which the appellees claim, that if the United States had sold, or if pre-emption rights had been attached to, any of the lands therein granted at the time the line of railroad therein referred to was definitely fixed, then other lands of the United States lying nearest to the tiers of sections in which the granted lands lay might be selected, in alternate sections and parts of sections, to make up for the deficiency caused by sales and pre-emptions, provided that the lands so selected lay within 15 miles of the line of the railroad, as the same might be located. The act of congress of May 12, 1864, which granted four additional sections per mile, further provided that the lands might be selected within 20 miles of the railroad in question.

The appellant's road, as laid out and constructed, crosses the appellees' road some distance west of Winnebago City, and for some distance east and west of the point of intersection the two roads approach each other so nearly that the land grants interfere and overlap. The lands in controversy in this proceeding lie within the 10-mile or granted limits of the appellant's road. The appellant, therefore, claims that according to a well-established doctrine the act of congress of July 4, 1866, operated as a present grant of all of said lands to the state of Minnesota for its exclusive use and benefit. St. Paul & S. C. R. Co. v. Winona & St. P. R. Co., 112 U. S. 720, 5 Sup. Ct. Rep. 334.

Said lands also lie within 20 miles of the appellees' road, but more than six miles therefrom. They are therefore outside of the appellees' granted limits as defined by the act of March 3, 1857, but are within their indemnity limits. On the completion of their road the appellees laid claim to the aforesaid lands as lands which they were entitled to to make up for deficiencies within their granted limits. The claim was conceded both by the general government and by the state of Minnesota. The lands were accordingly certified to the state, and were by the state patented to the appellees between August 22, 1867, and the year 1876. Notwithstanding the action of the general government and the state, no steps were taken by the Southern Minnesota Railroad Company, or its successor in interest, to enforce its alleged right of the lands in question until February 20, 1880. On the last-mentioned date a bill was filed by the appellant against the appellees in the district court of Nobles county, in the state of Minnesota, with a view of recovering a large portion of the same lands, as it is claimed, which form the subject-matter of the present controversy. The bill filed in the district court of Nobles county discloses the same title to the lands that the appellant then sought to recover, which is pleaded and relied upon in the case at bar. It

also prayed for the same relief as to the lands then in litigation which is sought for in the present proceeding. The suit in the district court of Nobles county resulted in a decree in favor of the appellees on March 28, 1883, after a full hearing upon the merits, from which decree no appeal was taken by either party. Among other defenses urged in the present suit, the appellees plead the record and final decree in the suit formerly tried in the state court as a bar to the action. It should be further stated that a small portion of the lands sued for in the present case are situated in even numbered sections in township 105, ranges 41 and 42. Both parties lay claim to these lands under the provisions of an act of congress approved June 22, 1874, (18 Stat. 194,) which was enacted for the relief of actual settlers upon lands previously granted to railroad companies.

John W. Cary and Frank W. M. Cutcheon, (W. H. Norris, Charles E. Flandrau, and George C. Squires, on the brief,) for appellant.

George B. Young, for appellees.

Before SANBORN, Circuit Judge, and THAYER, District Judge.

THAYER, District Judge, after stating the facts as above, delivered the opinion of the court.

It is urged that the plea of a former adjudication is not supported by the record of the suit formerly pending in the district court of Nobles county, Minn., for the reason that the record does not show what lands the appellant then sought to recover, or at least that it does not show that the lands then sued for are a portion of those now claimed. We think that this contention is untenable. The bill of complaint filed in the district court of Nobles county, contained among others, the following allegations, in substance: That, upon the filing of its map of definite location, and upon the completion of its road, the appellant became entitled, under the act of congress of July 4, 1866, and the act of the Minnesota legislature of February 25, 1867, to every alternate section of land designated by odd numbers, for 10 miles in width, on each side of its road, situated in ranges 32 to 45, both inclusive, and in townships 101 to 107, both inclusive, these being lands within its place limits; that it also became entitled to select, if necessary, all of the alternate sections designated by odd numbers within the ranges and townships aforesaid, which were more than 10 and less than 20 miles from its road, to make up for any deficiency within its granted or place limits; that it, in fact, required all of the lands within its deficiency limits to make up for losses within its granted limits; that it had applied to the secretary of the interior to certify to it all of the alternate sections of land aforesaid that were within its place limits and its indemnity limits, and that he had declined to so certify any of said lands because they had already been certified to the state of Minnesota as lands which of right belonged to the appellees; and that the appellees had wrongfully obtained patents for said lands from the state. Annexed to the bill of complaint in the Nobles county suit was a diagram, which was alleged to be a correct map of appellant's road through the aforesaid townships, from the east line of range 32 to the western boundary of the state of Minnesota; and the bill prayed that the appellees might be adjudged to convey to the appellant said lands so conveyed to them in fraud of the appellant's rights.

In response to the foregoing allegations of the bill, the answer denied that the appellant had ever become entitled to the lands therein mentioned, or to any part or portion thereof. The answer admitted that all of said lands had been certified to the state of Minnesota for the benefit of the appellees, and it further averred that the lands in question rightfully belonged to them, and that they had been properly certified for their benefit. These allegations of the bill and answer show with sufficient certainty what lands were embraced in the former litigation. It does not seem to have occurred either to the court or counsel, during the long pendency of the suit in the state court, that there was any difficulty in ascertaining from the pleadings and the diagram in that case, what lands were then claimed, and we have no difficulty in determining from the record what lands were then in controversy, or in identifying them as a portion of those now sued for. It appears to us that substantially all of the sections designated by odd numbers which lie in the townships aforesaid, and in and west of range 32, and within the appellant's place or indemnity limits, were involved in the former suit, and were actually claimed by the appellant. A decree sustaining the appellant's title to all of said lands, could without doubt be supported under the averments of the former bill. In the present case the appellant seeks to recover the lands formerly claimed which lie within its place limits.

It is also suggested that the plea of a former adjudication is not tenable, for the reason that the right to relief in the former action was predicated on the alleged fraud of the appellees, in constructing their road for some distance through the territory where the land grants interfere, on a route somewhat different from that indicated by their original map of definite location. In other words, it is urged, in substance, that the respective suits proceed upon a different theory, and state different grounds of recovery, and that the plea is bad for that reason. This contention would be immaterial, so far as the lands now and formerly sued for are concerned, even if it was true, as supposed, that the right of recovery in the former action was predicated solely on the ground of fraud. The appellant might have pleaded in the former action the same grounds of recovery which it now relies upon, and if it did not do so it cannot take advantage of such neglect. It will not be allowed in this suit to avoid the conclusive effect of the former decree, by averring that it did not plead a particular ground of recovery which it obviously might have pleaded. The parties to the two suits being the same, the judgment in the former case operates as an estoppel, both as to those grounds of recovery which were pleaded, and as to those that might have been pleaded, so far as the lands now sued for are concerned, which were also claimed in the previous action. Cromwell v. Sac Co., 94 U. S. 351-353. But it is a mistake, we think, to suppose that the alleged fraud of the appellees in departing somewhat from their line of definite location was the sole basis for the relief sought in the suit instituted in the district court of Nobles county. In the complaint filed in that case, the appellant pleaded the same equitable title to the lands lying within its place

limits, which are the only lands now sued for, that is relied upon in the case at bar; and the allegations contained in the respective bills, as well as the prayers for relief, are substantially the same. Furthermore, the two suits are alike in the respect that they are actions to establish and to enforce a constructive trust, on the ground that the appellees have wrongfully obtained patents for certain lands which of right belong to the appellant. It is apparent, we think, that in the former suit the complainant laid claim to every alternate section, designated by odd numbers, which was situated within its place limits, not on account of any fraud practiced by the defendants, but solely on the ground that as to such lands the act of congress of July 4, 1866, was a grant in praesenti, and that the title thereto became vested in the complainant, by relation, as of date July 4, 1866, upon the filing of its map of definite location. That is the same title to the lands which is preferred in the case at bar, and, as the record shows, it is the very matter which was considered and adjudicated in the former action. We are of the opinion, therefore, that the decree in the Nobles county suit is an effectual bar to the action, in so far as those lands are concerned which lie in and west of range 32.

The next question to be considered is whether the appellant is estopped by the record in the former suit from asserting title to the lands lying east of range 32, which were not sued for in the former action. It is insisted by the appellee companies, that even as to such lands, the former judgment and findings (particularly the findings) operate as an estoppel. The doctrine is well established, that when an issue of fact, or a mixed question of law and fact, on which the decision of a case depends, has been tried and determined, the parties to such trial will be estopped, even in a second suit on a different cause of action, where the same issue or question arises, from contending to the contrary of what was thus found and determined. In Cromwell v. Sac Co., 94 U. S. 351–353, Mr. Justice Field says:

"Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered."

And in Outram v. Morewood, 3 East, 346, the rule is thus stated:

"It is not the recovery, but the matter alleged by the party and upon which the recovery proceeds, which creates the estoppel. * * * The estoppel precludes parties and privies from contending to the contrary of that point or matter of fact which, having been once distinctly put in issue by them, * * * has been, on such issue joined, solemnly found against them."

There are many cases in which the foregoing doctrine has been either stated or applied. Campbell v. Rankin, 99 U. S. 261–263; Nesbit v. Independent Dist., 144 U. S, 610–618, 12 Sup. Ct. Rep. 746; Franklin Co. v. German Sav. Bank, 142 U. S. 93–100, 12 Sup. Ct. Rep. 147; Laird v. De Soto, 32 Fed. Rep. 652; Corrothers v. Sargent, 20 W. Va. 351–356; Gardner v. Buckbee, 3 Cow. 120.

The authorities furthermore show, that the estoppel arising

from a finding in previous suit between the same parties, is not confined to a finding upon a question purely of fact, or upon a mixed question of law and fact, but that it extends as well to a decision construing an agreement between the parties, and to a decision which determines the legal rights of the parties on a state of facts common to both suits, although the causes of action are different. Tioga R. v. Blossburg & C. R., 20 Wall. 137; Merriam v. Whittemore, 5 Gray, 316; Goodenow v. Litchfield, 59 Iowa, 226-236, 9 N. W. Rep. 107, and 13 N. W. Rep. 86; Whitehurst v. Rogers, 38 Md. 503; Haynes v. Ordway, 58 N. H. 167; Clark v. Wiles, 54 Mich. 323, 20 N. W. Rep. 63; Mueller v. Henning, 102 Ill. 646; Bigelow, Estop. (5th Ed.) 99. It is also well settled that extrinsic evidence is admissible to show the identity of the issues in the two suits, where such fact is not made manifest by the record in the former proceeding. Miles v. Caldwell, 2 Wall. 35; Campbell v. Rankin, 99 U. S. 261; Packet Co. v. Sickles, 5 Wall. 580; Whitehurst v. Rogers, 38 Md. 503.

In the light of these principles the record in the Nobles county suit must be examined, with a view of ascertaining whether any finding therein made upon a question or issue common to both suits is an effectual bar to a recovery of the lands in controversy which lie east of range 32. The suit in the state court was tried before a referee, who returned into court his findings of fact and conclusions of law, in obedience to which a final decree was entered in favor of the appellee companies. There can be no doubt, we think, of our right to consider the entire report of the referee, as well as the pleadings in the case, for the purpose of ascertaining what issues were in fact raised and decided, and upon what theory the former judgment proceeded. In the former case two findings of fact were made and reported by the referee, upon which the decree in that case undoubtedly depended. The first of these findings was, in substance, as follows: That prior to any location of the appellant's road, and prior to the grant of July 4, 1866, the United States, through the proper action of the department of the interior, had accepted the location of the appellees' road from its eastern terminus as far west as the west line of range 39, and had fixed the limits of their grant under the acts of March 3, 1857, and May 12, 1864; and in the month of July, 1864, had withdrawn from settlement, entry, and location all of the lands in odd-numbered sections within a distance of 20 miles on each side of the appellees' road, from the eastern terminus thereof to the west line of range 39, and had thereby reserved said lands to be applied in aid of the construction of said road. In view of the foregoing finding the referee concluded, as a matter of law, that the withdrawal from entry and sale so found to have been ordered by the department of the interior, and to have been made pursuant to such order in July, 1864, operated in itself to exclude all of the odd-numbered sections lying within the appellees' indemnity limits, and as far west as the west line of range 39, from the operation of the granting act of July 4, 1866, under which the appellant claims; and upon that ground the referee recom-

mended a dismissal of the former bill as to all of the land formerly sued for, which lay within ranges 32 to 39, both inclusive. In the former case the referee also found, and reported, in substance, that a very large quantity of land lying in odd-numbered sections within the appellees' place limits, and which the appellees were entitled to under their grant, had been sold or pre-empted prior to the grant of March 3, 1857, and that all of the lands lying within 20 miles of the appellees' road which had not been pre-empted, or granted to other roads, prior to the location of the appellees' line, were in fact insufficient to satisfy the grant of 10 sections per mile to the appellee companies under the acts of March 3, 1857, and May 12, 1864. In view of the latter finding the referee further concluded, as a matter of law, that, because of the deficiency found to exist within the appellees' place limits, all of their indemnity lands as far west as the west line of range 39 passed *without selection*, and that the title thereto became vested in the state of Minnesota for the benefit of the appellee companies as soon as their road was definitely located to range 40, that is to say, long prior to July 4, 1866.

There can be no doubt that the referee properly concluded that a prior withdrawal of the lands by the United States for the benefit of the appellee companies, was a reservation of the same, within the meaning of the act of congress of July 4, 1866, such as would have the effect of excluding them from the operation of that act. We do not find it necessary to decide, and we do not decide, whether the further ruling of the referee is also tenable,—that the title to the lands became vested in the state, without any prior selection, by virtue of the deficiency found to exist within the appellees' place limits. It is obvious, we think, that the right to recover the lands lying east of range 32 is effectually set at rest by the record in the former case, if the finding in that case is accepted as conclusive,—that all of the lands within the appellees' indemnity limits, and east of range 40, were in fact withdrawn for the benefit of the appellee companies in July, 1864, by the proper action of the department of the interior. That finding comprehends all of the lands now sued for which were not formerly in controversy, and it goes without saying that, if the matters covered by the finding are not open to dispute, the estoppel raised by the former decree extends to the whole subject-matter of the present controversy.

We are unable to say that any sufficient reason exists which would warrant us in holding that the finding in question is not conclusive in the present suit. It was made a distinct issue in the former case, as it is in this, that the appellees' line was definitely located as far west as range 40 as early as 1859; that such location was duly accepted by the United States; and that all of the odd-numbered sections for a distance of 20 miles on either side of the located line, as far west as range 40, were actually withdrawn from entry, location, and sale for the benefit of the appellee companies in July, 1864, and were therefore unaffected, by the grant of July 4, 1866. Upon that issue of law and fact, there was a finding in

favor of the appellee companies in the former action, and upon such finding the decree in that case evidently rests. While it is true that some lands are involved in the present suit which were not formerly involved, yet it is obvious that as to them the action of the department of the interior in July, 1864, in ordering a withdrawal of lands, could have had no other or different effect than it had upon those previously sued for. All of the lands lying east of range 40, and within the appellees' indemnity limits, were comprehended and equally affected by the order of withdrawal made in July, 1864, as modified in June, 1865. If the proceedings taken by the department of the interior operated as a reservation of the lands situated in and west of range 32, as the referee found and determined, then, beyond all question, they had a like effect upon the lands lying to the east of that range. The action of the department of the interior having been reviewed in the former proceeding, and the effect thereof having been declared with respect to the lands then in controversy, we think that the appellant should be estopped from contending to the contrary of what was thus found and determined in a suit to recover other lands, which are similarly situated, and with respect to which the same questions of law and fact arise, in substantially the same form, and under the same circumstances. Public policy demands that parties should not be permitted to open up an issue which in an action between them has once been tried and determined, by a slight change in the subject-matter of a subsequent suit, where such change in the subject-matter does not alter the character of the issue, or any of the considerations applicable to its determination. It is sufficient to say with reference to the lands situated in even-numbered sections in ranges 41 and 42, which are sued for in this case, and were acquired by the appellees under the provisions of the act of congress of June 22, 1874, (18 Stat. 194,) by relinquishing to settlers all their right to certain odd-numbered sections, that the decree in the Nobles county suit is an effectual bar to a recovery of such even-numbered sections, and parts thereof, for the reason that the appellant's right thereto is solely dependent upon the establishment of its superior right to the odd-numbered sections which were relinquished by the appellee companies, and it was determined in the former suit, where the question was distinctly drawn in controversy, that it had no such superior equitable right. We have accordingly concluded that the plea of a former adjudication interposed by the appellee companies, should be sustained as to all of the lands which are claimed in the present suit.

It is further to be observed, that the case at bar presents other features which bring it fully within the rulings recently made by this court in Railroad Co. v. Sage, (8th Circuit,) 4 U. S. App. 160–191, 1 C. C. A. 256, 49 Fed. Rep. 315. The same considerations which induced us to hold in the case last referred to, that the right to relief in that action was barred on the ground of laches are equally applicable to the facts disclosed by the present record, and we might well rest our decision upon that ground alone. But

as the plea of a former adjudication has been strenuously urged in this court, and as the title to a large body of land is affected by the litigation, we have deemed it advisable to consider the merits of the additional defense which has in this case been interposed. For both of the reasons heretofore indicated, the action of the circuit court in dismissing the bill is approved, and its decree is therefore affirmed.